## CURTIS v. McNAIR et al., Appellants.

### Division One, March 18, 1903.

1. **Negligence:** ASSUMPTION OF RISK: PLEA: MASTER NEGLIGENT. A servant can not assume to bear the consequences of the master's negligence. He only assumes the risk of that which is liable to happen on account of the nature of the business when the master has used reasonable care to avoid such result. Where, therefore, the petition alleges the servant's injuries were due to defective appliances furnished for his use by the master, the dangerous condition of which was known or by the exercise of ordinary care would have been known to the master, a plea which charges that the danger arising from the defect was obvious, and known to the servant, is not a good plea of assumption of the risk.

2. ——: SAFE TOOLS: REASONABLE PRUDENCE: SCREEN TO "NOTCH HOLE" OF IRON FURNACE. It is the master's duty to furnish machinery and appliances for the servant that are as safe as reasonable prudence and ordinary care can make them; not the safest and best possible, but as safe and good as may be obtained by the exercise of such care as a man of ordinary experience and prudence engaged in such work usually exercises. And in this case it is held that the failure of the master to place a screen over the "notch hole" of a furnace used in reducing iron ore, from which molten metal, hot ashes and slag were liable to be suddenly blown out at a distance of twenty to sixty feet by a blast of air forced into the furnace, was negligence.

3. ——: ——: ——: CARE OF MASTER. The degree of care to be exercised by the master in furnishing tools for the use of his servants is commensurate with the hazard naturally incident to the business.

4. ——: ——: ——: EVIDENCE ESTABLISHING NEGLIGENCE. The evidence shows that a screen over the "notch hole" of a furnace for reducing iron ore, through which molten metal, hot ashes and slag were liable to be suddenly blown twenty to sixty feet by a blast of hot air in the furnace, could have been furnished without unreasonable effort; that it had been a part of the equipment of the work for years, and designed for protection against accidents of the very kind that resulted in plaintiff's injury; that it had been absent only four or five days, and that it was defendant's intention, knowing that, to replace it soon. *Held*, that these facts sufficiently show that the screen was a contrivance that defendant should have furnished, that it was within the reasonable means of defendant to have furnished it, and that it was negligent in not doing so.

5. ——: ——: ——: ——: CONTRIBUTORY NEGLIGENCE. The danger to plaintiff, an experienced employee, in passing before the furnace was so obvious as to make his action contributory negligence, were it not for the fact, that, seeing the screen was absent, he spoke to the defendant's foreman about the danger and was assured by him that the blast would not be blown hard until the screen was in place.

6. ——: ——: ——: ——: ——: ADMISSIBILITY. Evidence of this statement by the foreman is admissible in evidence without an averment that the plaintiff was lulled into security by that assurance, since it is responsive to the plea of contributory negligence, going as it does to show that notwithstanding the plaintiff saw the danger it was not negligence in him to continue the work.

7. ——: ——: ——: ——: RELIANCE ON. The fact that plaintiff returned to work after receiving such assurance is evidence of his reliance thereon.

8. ——: ——: ——: ——: EVIDENCE OF HARD BLAST: IMMATERIAL. Whether or not there was a hard blast and whether or not it caused the blowout that injured plaintiff, is immaterial as affecting the question of his conduct in returning to work after receiving the assurance.

9. ——: MEASURE OF DAMAGES: INSTRUCTIONS: FUTURE LOSS OF TIME. If the petition charges that plaintiff is permanently injured and the evidence tends to so show, an instruction which charges the jury to "consider . . . his loss of time and such damages, if any, as you may from the evidence find it reasonably certain he will suffer in the future," does not call for an estimate of the loss of time in the future, but for damages which the jury may find it is reasonably certain the plaintiff will suffer in the future.

10. ——: ——: MEDICAL ATTENDANCE. Under an allegation in the petition that plaintiff has incurred liability for medical attendance, he is entitled to recover for money expended for that purpose; as to his right to compensation there is no difference between expending sums and incurring obligations.

11. ——: CONTRIBUTORY: SPECIFICATIONS: INSTRUCTIONS AND EVIDENCE. Where defendant in his answer specifies the acts which constitute his plea of contributory negligence, the plaintiff is not called upon to meet an issue that he was guilty of an act of contributory negligence not so specified; and if defendant asks an instruction which brings that issue into the case, it should be refused.

12. ——: ——: ——: SHORTEST ROUTE. If plaintiff was where his business called him at the time he was hurt, and going the way that was shortest and most convenient, and the usual way, an

instruction that brings into the case the issue of whether or not one route was more dangerous than another, or whether or not he took a dangerous route when a safe one was open to him, should be refused.

13. ———: MASTER'S DUTY. An instruction that substitutes the danger incident to the business as the master sees fit to run it, for the danger incident to that kind of a business when conducted with reasonable care for the safety of the servant, should be refused.

14. ———: EXCESSIVE DAMAGES. It is held in this case, where the flesh was burnt off of plaintiff's arm and back in large patches to the depth of nearly an inch, and the nerves and blood vessels, after four months constant treatment, were so exposed that he was liable at any time to lose the use of the arm, that an award of $4,650 is not so excessive as to authorize the appellate court to interfere.

Appeal from St. Louis County Circuit Court.—*Hon. John W. Booth, Judge.*

AFFIRMED.

*Seddon & Blair* and *Robert A. Holland, Jr.,* for appellants.

(1) The court erred in refusing to give the instruction in the nature of a demurrer to the evidence offered by defendants at the close of plaintiff's evidence in chief, and also at the close of all the evidence. (a) There was no evidence of any negligence on the part of defendant. It has been repeatedly held in this State that it is not necessary for the master to furnish any particular sort of appliance for the use of the servant. In this case the master saw fit to furnish the servant with a furnace that had no screen in front of it. This, however, would create no liability on the part of the master. Cagney v. Railroad, 69 Mo. 416; Smith v. Railroad, 69 Mo. 32; Winkler v. St. L. Basket and Box Co., 137 Mo. 394; Epperson v. Postal Cable Co., 155 Mo. 346; Holloran v. Union Iron and Foundry Co., 133 Mo. 470. (b) The evidence shows quite clearly that plaintiff assumed whatever risk there was in working

near the furnace without a screen. He says himself that he knew there was no screen, and knew it was dangerous to work without a screen. He knew that there was apt to be a blow-out toward the close of every casting. Moreover, he had frequently worked in front of the furnace, and between the furnace and the screen, and hence knew just how to look out for and avoid the blowouts. Epperson v. Postal Cable Co., 155 Mo. 346; Nugent v. Kauffman Milling Co., 131 Mo. 241; Tyler v. Bothe, 117 Mo. 475; Stagg v. Westen Tea Co., 69 S. W. 391; Spiva v. Osage Coal Co., 88 Mo. 68; McAuliffe v. Gale, 11 Amer. Neg. Rep. 6.    (2) The court erred in giving instruction A at the request of plaintiff. (a) The following portion of said instruction is erroneous: "And that the danger, if any, to which plaintiff was so exposed, was dependent, to a great degree, upon the degree of atmospheric pressure existing at any time within the said furnace, and tending to force its contents out through said notch hole." The error in said portion consists in this, that there was no evidence upon which to base the said portion of instruction. There was no evidence tending to show that the blow-outs depended upon the degree of pressure. Upon the contrary, all the testimony of all witnesses who testified on this point is to the effect that the blow-outs were due to the manner in which the iron in the hole became stopped up. It is well settled in this State that it is erroneous to give an instruction that is not based upon any evidence. Stone v. Hunt, 114 Mo. 66; Evans v. Interstate Co., 106 Mo. 594; State ex rel. v. Hope, 102 Mo. 416; State v. Brown, 145 Mo. 680; Wilkerson v. Eilers, 114 Mo. 246.    (b) Said instruction is further erroneous in that it entitles the plaintiff to recover if the defendants knew that the screen was necessary to the safety of their employees, and failed to have the screen. This portion of said instruction is erroneous, because the master is not liable for every failure to provide for the safety

Vol 173 mo—18

of his employees even if he knows that certain protections are necessary. It is only where his failure indicates absence of ordinary care that there is any liability. (c) Said instruction is further erroneous in that it predicates a right of recovery if the foreman assured the plaintiff that while the screen was absent they would not blow the furnace hard, and that plaintiff relied upon this assurance. This portion of the instruction is erroneous because it does not require the jury to find that on this occasion the defendants did in fact blow the furnace hard, and that such hard blowing was the cause of the accident in question. This portion of the instruction is further erroneous because it predicates a recovery upon a finding that the plaintiff was relying upon said assurance of the foreman, when there is not a scintilla of evidence to the effect that plaintiff relied upon said assurance. Stone v. Hunt, supra; State ex rel. v. Hope, supra; Evans v. Interstate Co., supra; State v. Brown, supra; Wilkerson v. Eilers, supra. (3) The court erred in refusing to give instruction 5 asked by defendants, and refused by the court. Said instruction reads as follows: ''The court instructs the jury that in arriving at your verdict you will disregard all the evidence tending to prove that plaintiff received an assurance from the defendants' foreman that a full blast would not be used while the screens were not in position.'' This instruction should have been given because there was no allegation in plaintiff's petition of any such assurance, or of any reliance upon such assurance by the plaintiff. The parties are bound by the theories embodied in their pleading, and can not state one cause of action and recover on another. Chitty v. Railroad, 148 Mo. 64; Yarnall v. Railroad, 113 Mo. 376; Melvin v. Railroad, 89 Mo. 106; Daugherty v. Midland, 53 N. E. 844.

*Johnson, Houts, Marlatt & Hawes* for respondent.

(1)    The petition properly charges, and the evidence showed, negligence on the part of the defendants in failing to provide, at the time of the injury to plaintiff, a screen or other appliance to protect defendants' employees, including plaintiff, from danger of melted iron, slag, etc., being blown upon them from the "iron notch" in the furnace.    (a) The general rule is that the master is bound to exercise reasonable care to prevent accidents to his workmen; he is bound to furnish suitable machinery, and see that it is properly protected.    Wood, Master and Servant (2 Ed.), sec. 329; Shearman & Redfield, Negligence (5 Ed.), sec. 194; Rodney v. Railroad, 127 Mo. 689; Hough v. Railroad, 100 U. S. 217; Williams v. Railroad, 119 Mo. 322.    (b) This occupation being attended with danger to life and limb of their employees, a higher duty, that of using all reasonable precautions, and of obtaining all appliances readily obtainable for the protection of those employees, devolved upon defendants.    Mather v. Rillston, 156 U. S. 391-398; Burke v. Anderson, 69 Fed. 314; Western Coal & Mining Co. v. Berberich, 94 Fed. 333; Deweese v. Meramec Iron Co., 128 Mo. 423, affirming 54 Mo. App. 476; Keegan v. Kavanaugh, 62 Mo. 232; Hysell v. Swift, 78 Mo. App. 44.    (2) Plaintiff did not by remaining in the defendants' employ "assume the risk" of injury.    (a) The evidence was undisputed that plaintiff was not an experienced furnace man, and that he did not know that blow-outs occurred without warning.    He did not know the danger, and consequently could not assume the risk.    Doyle v. Trust Co., 140 Mo. 1; Sullivan v. Railroad, 107 Mo. 66; Connelly v. St. Joseph Press Ptg. Co., 166 Mo. 463.    (b) The duty to provide safe instrumentalities, including a safe place to work, and safe appliances for the servant, is a personal duty of the master.    Failure to perform this duty is negligence, against which the master can not contract; consequently there is no such thing as "assumption of risk" by the servant of injury arising from neg-

lect of the master to fulfill this duty. Blanton v. Dold, 109 Mo. 75; Settle v. Railroad, 127 Mo. 343; 1 Bailey Personal Injuries, pr. 469; Pauck v. St. L. D. B. & P. Co., 159 Mo. 477; Wendler v. People's House Fur. Co., 165 Mo. 536; Pauck v. St. L. D. B. & P. Co., 166 Mo. 644. (3) There was no "assumption of risk" in this case. Plaintiff complained to the foreman that the screen was not up, and was told the furnace "would not be blown hard, until it was put up." This amounted to an assurance to plaintiff, and justified his remaining at work. Shearman & Redfield, Negligence (5 Ed.), p. 372; Wharton, Negligence, sec. 221; Thorpe v. Railroad, 89 Mo. 650; Railroad v. Babcock, 154 U. S. 200; Hoffman v. Dickinson, 31 W. Va. 152; Stephens v. Railroad, 96 Mo. 212. (4) The question whether continuing in the service, with knowledge that the screen was not in position, should defeat plaintiff's action is, under our decisions, a question of contributory negligence, and under the facts in the case—especially in view of the fact that plaintiff did not know of the danger of these sudden blow-outs, without warning, and of the assurance given him by the foreman which lulled him into security—it was undoubtedly a question of fact for the jury. Blandon v. Dold, 109 Mo. 75; Settle v. Railroad, 127 Mo. 343; Hamilton v. Mining Co., 108 Mo. 376; O'Mellia v. Railroad, 115 Mo. 205; Railroad v. Mares, 123 U. S. 710; Pauck v. St. L. D. B. & P. Co., supra; Wendler v. People's House Fur. Co., supra; Hamman v. Cent. Coal & Coke Co., 156 Mo. 244. (5) The court did not err in admitting evidence of the promise to abate the force of the blast while the screen was down. It was properly admitted under the general denial of assumed risk and contributory negligence. Conroy v. Vulcan Iron Works, 62 Mo. 35; Connolly v. St. Joseph Press Ptg. Co., 166 Mo. 464. (6) The instruction on the measure of damages was correct. Schmitz v. Railroad, 119 Mo. 277; Rosenkranz v. Railroad, 108 Mo. 9; Merriles v. Railroad, 163 Mo. 492.

VALLIANT, J.—Defendants own and operate a blast furnace, and plaintiff, while in their employ, suffered serious personal injuries which he alleges resulted from their negligence.

The petition states in detail the character of the furnace and the method of operating it. From this it appears that iron ore is put into the furnace, and when it has been reduced to a certain condition the molten iron is caused to flow out through an opening called the "iron notch" into receptacles provided for its further disposal. This flow of molten iron is driven out by a blast of air forced into the furnace. In this operation there was danger of particles of melted metal, hot ashes and slag being suddenly and without warning blown out for a distance of twenty to sixty feet, and therefore, for the protection of the men employed in the work around the furnace, reasonable and ordinary care demanded of defendants that they should have an iron screen in front of the opening, but on the occasion in question there was no such screen. Plaintiff was employed to work around the furnace and his duties called him to pass in front of this opening, and while he was doing so, in the exercise of ordinary care, there was a sudden blow-out of melted iron, hot ashes and slag, striking him on the face, head, arms, legs and side and inflicting very serious injuries. The negligence charged is the failure to provide a screen.

The answer was, first, a general denial, then a plea of contributory negligence in which it was stated that for years prior to the occasion in question there had been an iron screen in front of the furnace to protect those who stood behind it from the hot iron and other materials which the furnace was accustomed to throw out, but that on this occasion the screen was not in position and had not been for several days and plaintiff knew or by the exercise of ordinary care would have known those facts, yet negligently walked in front of

the opening while the furnace was in blast and that that negligence directly contributed to his injuries.

Then there is another plea in the answer, to the effect that the conditions surrounding the furnace and its operation as stated in the petition were open and obvious and were known or would have been known to plaintiff, if he had exercised ordinary care, and the danger, if any, of working around the furnace under those conditions was also open and obvious, and was known or by the exercise of ordinary care would have been known to the plaintiff, and therefore it was a risk that plaintiff assumed.

The reply was a general denial.

The testimony on the part of the plaintiff tended to sustain the averments of his petition, and that on the part of the defendants tended to sustain the statements in their answer. We deem it necessary to refer only to the evidence bearing on the alleged contributory negligence of the plaintiff. He was there in the capacity of a common laborer; that is to say, he had been employed there for four or five years, and was familiar with the scene. But his work had been usually that of breaking ore, in an adjoining room. Occasionally, however, he had been called into the furnace room to do the work of what was called a furnace helper, and when that was so he was paid a furnace helper's wages, which were more than his ordinary wages. At the time of this accident he was working in the furnace room, by order of the foreman, doing what is called taking samples. The total number of days, however, that he was engaged in work around the furnace, was thirty-five or forty, distributed through the four or five years of his employment there. His rank as a servant in the establishment was that of an ore-breaker.

It had been the custom of defendants for years to have the screen in place, but the furnace had been shut down for several weeks just before this accident, and in that interval the screen had been taken down, and when

the furnace was started up again, which was three or four days before the accident, the screen was not put up, and the furnace was operated without it. The plaintiff was permitted to testify, over the objection of defendants, that he had called the attention of Mr. Craig, the foreman, to the fact that there was no screen in place, and that Mr. Craig said that they would not blow the furnace hard until they put the screen up. Another witness testified to hearing that conversation, and there was no evidence to the contrary. It was after that conversation, and while the plaintiff was in the performance of his duty, passing in front of the iron notch, that the blow-out occurred, which threw the shower of melted iron, hot ashes and slag on him and caused his injuries.

At the close of plaintiff's testimony and again at the close of all the testimony, defendant asked an instruction to the effect that plaintiff was not entitled to recover, which the court refused and defendants excepted. The cause was submitted to the jury under instructions hereinafter discussed, a verdict for plaintiff for $4,650 was returned, and there was a judgment accordingly from which this appeal was taken.

## I.

The answer, as we have seen, was in three parts, a general denial, a plea of contributory negligence, and a plea that plaintiff had assumed the risk. The material averments in the plea last named are that the absence of the screen and the danger, if any there was arising from such absence, were conditions open and obvious, known to plaintiff, or would have been known if he had exercised reasonable care and therefore it is a risk he assumed. That is not a good plea. A servant assumes the risk of danger incident to the work he engages to perform, and if he is injured as a result of that which was to be expected in the usual course of such

work, the master is not liable.   There are many kinds of business the operations of which are attended with danger which can not be prevented by ordinary care and precaution.   When one engages in such business and suffers from causes incident to its character, he has no legal remedy.   In such case he suffers not because of negligence of his master, but because of a danger incident to the business.   But the only risk the servant does assume, is of that which is liable to happen on account of the nature of the business when the master has used reasonable care to avoid such a result.

It is the duty of the master to exercise reasonable care, commensurate with the nature of the business, to protect his servant from the hazards incident to it. [Williams v. Railroad, 119 Mo. 316; Rodney v. Railroad, 127 Mo. 676; Herdler v. Buck's S. & R. Co., 136 Mo. 3.]

This duty the law imposes on the master and will not allow him to cast it off.   It is contrary to public policy to allow the master to relieve himself by contract from liability for his own negligence.   What the law forbids to be done by express contract, it will not assist to be done by implying a contract.

A risk which the law, on the ground of public policy, will not allow the servant to assume, it will not imply from his conduct that he has assumed.   [Blanton v. Dold, 109 Mo. 64; Settle v. Railroad, 127 Mo. 336; Pauck v. St. L. Dressed Beef Co., 159 Mo. 467; Wendler v. People's H. F. Co., 165 Mo. 527.]   The servant never assumes the risk of the master's negligence.

In a suit, therefore, by a servant against his master in which the petition alleges that the plaintiff's injuries were due to defective appliances furnished by the master for use of the servant, the dangerous condition of which was known or by the exercise of ordinary care would have been known to the master, a plea which sets up that that condition was also known or by the exercise of ordinary care on his part would have been

known to the servant, does not constitute a defense to the action on the theory of an assumption of risk by the servant, because the servant can not assume to bear the consequences of the master's negligence.

If the plaintiff's suffering was solely from a risk incident to the business, he can not recover because it was a risk he assumed when he undertook the service, and this fact the defendant may show under his plea of general denial, because by so showing he disproves the allegation of negligence on his part. A special plea that plaintiff assumed such a risk is unnecessary. But if the defect in the machinery is obvious or is known, or by the exercise on his part of ordinary care would have been known, to the servant who continued, nevertheless, to use it until the accident occurred, those facts may be pleaded as going to constitute contributory negligence, and in such case if the issue so tendered is found for the defendant, the plaintiff can not recover, not because he has assumed the risk of his master's negligence, but because notwithstanding the negligence of his master, the law will not allow him to recover when his own negligence has contributed to the result. The difference in legal effect between assumption of risk and contributory negligence in this connection is this: if the fact that plaintiff saw that the screen was absent and nevertheless continued in the service, amounts to an assumption of the risk, then it is an absolute bar to the action regardless of the fact that the plaintiff under the circumstances might have been exercising the care which a man of ordinary prudence under like circumstances would have exercised, whereas, judged by the law of contributory negligence, though he saw the screen was absent, yet if he continued his work under conditions that showed that he was nevertheless exercising such care as a man of ordinary prudence, in his place, would have exercised, he would not be guilty of contributory negligence.

There was evidence in this case tending to show that the conduct of the plaintiff, under the conditions

apparent, was consistent with reasonable and ordinary care. The absence of the screen was within the observation of every one, yet not the plaintiff alone, but all the other men, whose duties called them that way, exposed themselves in like manner, and even the foreman, Mr. Craig, testified that he had, during the three or four days in which the furnace was in blast without the screen, passed in front of the notch just as plaintiff did. In addition to that fact under the issue of contributory negligence the plaintiff was entitled to have his conduct considered in the light of the assurance given him by the foreman that there would be no hard blast until the screen was put up. The obvious absence of the screen, the apparent danger, the plaintiff's familiarity with the operation of the furnace, were all facts presented to the jury along with other facts proper to have been taken into account in the trial of the issue under the plea of contributory negligence and the defendants had the full benefit of all of them.

Nothing in this opinion said is intended to gainsay the proposition that if a plaintiff's evidence should show that he deliberately went into danger that was so obvious that reasonable men could not honestly differ about it, the court should declare as a matter of law that the plaintiff was guilty of contributory negligence, and take the case from the jury. But that is not this case.

The only issues properly in this case were those covered by the general denial and the plea of contributory negligence.

## II.

Appellants contend that the instruction asked by them in the nature of a demurrer to the evidence, should have been given for two reasons: first, that there was no evidence of negligence on the part of defendants.

The learned counsel demonstrate by reason and

authority that a master is not liable as for negligence "for the reason alone that a safer mode might have been adopted or less dangerous appliances might have been employed." [Winkler v. Basket Co., 137 Mo. 394.] And that: "It is the defendant's duty to furnish its servants with tools, appliances and instrumentalities reasonably safe for the purpose for which they were used, but is not required to use the most modern or improved tools or appliances." [Holloran v. Foundry Co., 133 Mo. 470.] That doctrine is well founded, but it is entirely consistent with the principle that it is the master's duty to furnish machinery and appliances that are as safe as reasonable prudence and ordinary care can make them, not the safest and best possible, but as safe and good as may be obtained by the exercise of such care as a man of ordinary experience and prudence engaged in such work usually exercises.

We have already said that the degree of care to be exercised by the master in this respect must be commensurate with the hazard naturally incident to the business. The Supreme Court of the United States have said: "Occupations, however important, which can not be conducted without necessary danger to life, body, or limb, should not be prosecuted at all without all reasonable precautions against such dangers afforded by science. The necessary danger attending them should operate as a prohibition to their pursuit without such safeguards. Indeed, we think it may be laid down as a legal principle that in all occupations which are attended with great and unusual danger there must be used all appliances readily attainable known to science for the prevention of accidents, and that the neglect to provide such readily attainable appliances will be regarded as proof of culpable negligence." [Mather v. Rillston, 156 U. S. 391.] Counsel quote from Winkler v. Basket Co., supra, that "a master, as between himself and his servant, has a right to adopt his own mode of conducting his business, and

to select the instrumentalities to be used therein." That is undoubtedly the master's right within the limits of the rule above quoted, and the opinion in that case carries it no farther. If it was reasonably safe within the bounds above specified to run this furnace without a screen, then the defendants had a right to so run it, and they are not liable in this case. But who is to judge as to whether or not it was reasonably safe to run it without the screen? If the screen would add to the safety of the servants at work there, the evidence shows that it was a contrivance within the means of defendants to furnish without unreasonable effort. The answer admits and the proof shows that this screen had been a part of the equipment in defendants' works for years, and that it was designed by them for protection of certain of their employees working there against accidents of the very kind that resulted to the plaintiff's injury; and defendants' evidence shows that it was their intention to replace it soon. What better evidence could the plaintiff have produced to show that it was a contrivance that should have been furnished, and that it was within the reasonable means of defendants to have furnished it? The defendant's superintendent testified on cross-examination:

"Q.    Orders had been given to put up the screen? A.    Yes, sir.

"Q.    They had realized the importance of it by ordering it to be put up there?    A.    Yes, sir.

"Q.    You realized that yourself—the necessity of having the screen there?    A.    Yes, sir; for the protection of the skimmer; I always make that qualification —for the man at the skimmer—because it can't protect the people far down the pig-bed, because coke. blows over the top of it.

"Q.    It would protect anybody at the skimmer or near the skimmer?    A.    Yes, sir.

"Q.    Or anybody passing directly in front of the runner?    A.    If it was blowing over the top it wouldn't.''

We can not agree to the proposition that there was no evidence of negligence of defendant.

The second ground on which appellants stand for their contention that the instruction for a nonsuit should have been given, is, that the absence of the screen and the danger liable from that cause were open and obvious and known to plaintiff or would have been known if he had used ordinary care, therefore, he was guilty of such negligence himself in the matter as should preclude a recovery. The position taken on this ground is somewhat inconsistent with that taken on the first ground. Defendants can not well say that the absence of the screen was no evidence of negligence and yet say that the danger therefrom was so obvious as that plaintiff could not have failed to see it, if he had used reasonable care. We are inclined to the view that the danger was obvious, and if there was no other fact in the case the court might have been justified in holding on the plaintiff's evidence that he was guilty of contributory negligence. But there was another fact in the case. Plaintiff seeing that the screen was absent, and appreciating the danger spoke to the foreman about it, and that foreman answered that they would not blow the furnace hard until the screen was in place; thereupon the plaintiff went on with his work.

It is argued that that testimony was illegal, because it was not averred in the petition that the plaintiff was lulled into security by the assurance of the foreman. In a petition in an action at law the plaintiff is not bound to anticipate an affirmative defense and reply to it. The negligence which forms the bottom of plaintiff's cause of action is the failure of the defendants to provide a screen, thus exposing the plaintiff to unnecessary danger. The defendants answer by a plea of confession and avoidance, saying, true it is we did not furnish the screen, but you knew it and knew the danger liable to ensue therefrom; therefore, you were guilty of negligence in continuing the service under those conditions.

The testimony as to what occurred when plaintiff brought the subject to the attention of the foreman is simply responsive to the charge of contributory negligence, going as it does to show that notwithstanding the plaintiff saw the danger it was not negligence in him to continue the work.

Defendants contend, however, that the evidence for plaintiff in this issue fell short of the mark in three respects, viz.: there was no evidence that the furnace was put to a hard blast, that such hard blast caused the blowout, that plaintiff relied on the assurance.

As to the plaintiff's reliance on the assurance, the fact that he returned to his work after receiving the assurance is evidence from which his reliance might be inferred. As to whether there was a hard blast and that caused the blow-out, it is immaterial as affecting the question of plaintiff's conduct in returning to his work after receiving the assurance. It might be conceded for the sake of the argument that the degree of force of the blast had nothing to do with producing the accident. The reply of the foreman, however, to plaintiff can not be construed otherwise than as intended to make him believe there would be no danger because there would be no hard blast. It was not a conversation between two men on an equality with reference to the subject, but it was a servant receiving assurance from his master. The master intended to make the servant believe that if there should be no hard blast there would be no blow-out, and he promised there should be no hard blast. If in fact a hard blast had nothing to do with causing a blow-out, then the master deceived the servant by making him believe it did. If the blow-out would not occur without a hard blast, then the fact of the blow-out is evidence that there was a hard blast and that the master did not keep his promise.

There was no error in refusing the instruction for a nonsuit.

### III.

The giving of the instructions as asked by plaintiff is assigned for error. The first instruction is:

"A.   The court instructs you that if from the evidence in the case you believe that on or about October 31, 1899, defendants were operating and controlling a furnace, and buildings in connection therewith, situate in the city of St. Louis; that said furnace stood at the north end of a room (of such buildings) known as the casting-room, on the floor of which room melted iron from such furnace was, in the ordinary course of the business there carried on by defendants, cast into pig iron; that in the furnace iron ores were melted, and the melted iron and slag were in the course of defendant's business drawn from the furnace by opening a hole therein, known as the notch hole, located on the south side of the furnace, and facing toward the south end of such casting-room; that in the ordinary course of such business upon the opening of said hole, iron, slag, ashes and other heated matter was liable to run from said hole; that to facilitate the drawing off from said furnace through said hole, heated air was in the ordinary course of defendant's business forced into said furnace in such manner as to create strong atmospheric pressure upon the contents of said furnace, so as to force the same strongly outward through said hole, and in such manner as to, at times, force and blow out from said furnace, through said hole, into said room, and toward the south end thereof, molten iron, slag and other hot substances so as to endanger employees of defendants engaged in said casting-room on the south side of said notch hole, and if you further find that on October 31, 1899, plaintiff was in the employ of the defendants in said casting-room and that there was no screen in front of said notch hole to intercept melted iron, slag or other material that might be forced by such pressure through such notch hole, and this state of affairs had existed for three or

more days, and that during that time plaintiff had occasion from time to time, in the course of his employment by defendants, to pass in front of said notch hole in such a manner as to be exposed to danger of being burned by hot metal, slag or other substances thrown from said furnace as aforesaid, and if you find that such danger would not have existed had a proper screen to intercept such hot substances been then and there erected and maintained by defendants, and that the danger, if any, to which plaintiff was so exposed was dependent to a great extent upon the degree of atmospheric pressure existing at any time within the said furnace and tending to force its contents out through said notch hole, and that the extent of such pressure was not a matter within the observation of plaintiff, so that he could determine the amount or force thereof, and if the jury find that, in said casting-house defendants had some ten feet or more in front of said notch hole a place provided for the maintenance of a screen for the interception of such melted iron, slag and other hot substances thrown out of such notch hole, and that it was necessary and known to defendants to be necessary for the safety of defendant's employees in said casting-room, or of plaintiff that such screen should be there maintained, and that plaintiff, in the course of his employment, while said furnace was in operation, on October 31, 1899, from time to time, had occasion to pass in front of such notch hole, south of the point provided for such screen; and if you further find that George Craig was defendant's foreman, and as such, had charge and control of the business, and of the employees of defendants in said furnace and casting-house; and that plaintiff was aware that he was exposed to some danger, from the absence of such screen, in so passing in front of such notch hole, and called the attention of the said foreman to the absence of such screen, and that thereupon the said foreman said to him that they would not blow hard until the screen was put up; and if you find

that afterward, on the said 31st day of October, at a time when said furnace was in operation, plaintiff was, in the course of his employment aforesaid, passing in front of such notch hole, and south of the point so provided for such screen, a quantity of hot slag, ashes, or other material, suddenly blew out from said furnace through said notch hole, and struck and burned plaintiff, and that at the time of so being burned, plaintiff was exercising such care to prevent injury to himself as a person of ordinary prudence should have exercised under the like circumstances, and was relying upon the assurance, if any, of such foreman, that they would not blow hard until the screen was put up, then the jury will find the issues for the plaintiff.''

The objections to this instruction pointed out in the brief for appellant are, first, referring to the clause, ''and that the danger, if any, to which plaintiff was exposed, was dependent to a great extent upon the degree of atmospheric pressure existing at any time within said furnace, and tending to force its contents out through said notch hole,'' that there was no evidence on which to base it. It is argued that there was no evidence that the blow-outs were influenced by atmospheric pressure, but that they were caused by the notch being stopped up. We think counsel are mistaken on this point. In fact the whole mode of operation disclosed by the evidence shows that the molten iron is forced out by atmospheric pressure forced into the furnace and it would, therefore, seem to be unnecessary to hear evidence to show that the blow-out was influenced by the force behind it. Yet the defendant's foreman did testify:

''Q. Now, Mr. Craig, what effect on that blow-out would the putting on of a heavy or light blast have? A. Of course, the more pressure in the furnace the harder it would blow out.''

Second. It is objected that this instruction directs the jury in effect that if the screen was necessary and

Vol 173 mo—19

defendants knew it, it was their duty to put it in place. We find no fault with the proposition under the undisputed facts of this case. The defendants' answer shows, and their evidence shows, that this screen was a part of their working outfit, designed to afford a reasonable guard against a danger incident to the business. The clause in the instruction criticised has reference only to that screen as usually used by the defendants, and what is there said does not undertake to impose on the defendants the obligation of absolute insurer of the safety of their men.

The third objection is that the instruction does not require the jury before finding for the plaintiff on the issue in reference to the assurance of safety given him by the foreman to find that there was a hard blast and that that was the cause of the blow-out. We have already discussed that question.

The only other instruction given for plaintiff related to the measure of damages; it is as follows:

"B. The court instructs you, gentlemen of the jury, that if you find for plaintiff you should, in estimating his damages, consider his physical condition before and since receiving the injuries for which he sues, as shown by the evidence, the physical pain and mental anguish, if any, suffered by him on account of his injuries at the time of and since such injuries, as shown by the evidence; his loss of time and such damages, if any, as you may, from the evidence, find it is reasonably certain he will suffer in the future therefrom, and you will find a verdict for such sum as in your judgment will, under the evidence, reasonably compensate him for such injuries, including compensation for such reasonable amounts, if any, as the evidence shows he has expended or obligated himself for medical treatment."

The objections offered to this instruction are two, viz.: that "it entitled plaintiff to recover damages for his loss of time in the future" and that it authorized a recovery for "sums that he expended for medical treat-

ment." These objections are founded on the idea that no claim is made in the petition for such items of damage.

We do not understand the instruction to call for an estimate of loss of time in the future, but for damages which the jury may find that it is reasonably certain the plaintiff will suffer in the future. There is a statement in the petition that the plaintiff is permanently injured and there was evidence tending to sustain that statement.

As to items of expenses, the criticism of the instruction is that the petition does not allege that plaintiff has expended any sum, but only that he has incurred expenses. There is no difference, so far as the right to compensation in a case like this is concerned, between expending sums and incurring obligations; the plaintiff is entitled to recover for either.

There is no error in the plaintiff's instructions.

## IV.

At the request of the defendants the court gave the following instructions:

"1. The court instructs the jury that the defendants were not insurers of the plaintiff against injury while in their employment, and that you can not find a verdict for him merely because he was injured.

"2. The court instructs the jury that if you believe from the evidence that the plaintiff was not using ordinary care at the time and place of his injury, and that the failure to use such care directly contributed to cause his injury, then you will find for the defendants, and you are instructed that ordinary care is such care as would be used by an ordinarily prudent person under the same circumstances.

"3. The court instructs the jury that in considering its verdict, the jury should not be governed by sympathy for plaintiff because he met with an injury while

in defendant's employ, or have any prejudice or feeling either in favor of or against the plaintiff, or defendants, but the jury should only, in arriving at its verdict, be governed by the evidence and instructions of the court.''

And the defendants asked the following:

''4.    The court instructs the jury that if you believe from the evidence that at the time plaintiff sustained his injuries, he had completed his work of taking samples and was on his way from the sample bed to a point behind the furnace, and that while crossing the 'run' on his way to said point, the plaintiff was injured by cinders and other hot materials shooting from said furnace, and that plaintiff could have reached said point behind the furnace in perfect safety by going around the furnace, but knowing the danger, selected the dangerous route in front of the furnace, then the plaintiff is not entitled to recover, and you must find your verdict for the defendants.''

The court refused that instruction as asked, but modified it by erasing the words ''going around the furnace'' and writing in their stead ''by another route not materially more inconvenient.'' Defendants assign that modification for error.

The court would have been justified in refusing that instruction altogether, and even as modified it is more favorable to defendants than they were entitled to. If one route was more dangerous than the other, or if one was a safe while the other a dangerous route, both equally available to plaintiff and he knowing the conditions, selected the dangerous route, that fact might have been brought into the case by proper specifications under the plea of contributory negligence, but as it was there was no such issue in the case. There was, as we have seen, a plea of contributory negligence with specifications of the acts which defendants proposed to prove in support of the plea, but the route that plaintiff took was not one of the acts specified. The plaintiff was not called by the pleadings to meet that issue. But even if there had

been such a plea there was nothing in the evidence to justify the submission of such a question to the jury. Of course, if the man had not gone the way he did and at the time he did he would not have been in front of the notch when the blow-out came, and would not have been hurt. But he was where his business called him, and going the way that was the shortest and most convenient, and the usual way.

There were a number of other instructions asked by defendants and refused, which we deem unnecessary to copy in full here. Of these, number 5 was a direction to the jury to disregard the evidence as to the assurance given the plaintiff by the foreman. We have said sufficient on that subject. Numbers 6, 7, 8, 9 and 10 were in effect reiterations of the defendant's theory of the assumption of the risk, which we have already considered. Number 11 was an instruction on contributory negligence and was fully covered by number 2 given at the request of defendants. Number 12 was as follows:

"12. The court instructs the jury that the defendants had the right to operate the furnace with or without a screen, and from time to time to remove the screen for repairs, and if you believe from the evidence that the plaintiff was injured by reason of one of the dangers naturally and ordinarily incident to his working about the furnace without a screen, then he can not recover, and you will find for the defendants."

This instruction conforms to the theory contended for by the learned counsel, that the defendants had a right to conduct their business as they might see fit, but it leaves out of view the duty of the master to use reasonable care to protect his servants, and substitutes the danger incident to the business as the master sees fit to run it for the danger incident to that kind of a business when conducted with reasonable care for the safety of the servant.

Instruction number 13 is substantially the same as number 4 which we have already considered.

We discover no error prejudicial to defendants in the giving or refusing of instructions.

## .V.

It is insisted that the award of damages is excessive. The award was $4,650. The testimony of the physician who attended the plaintiff was: ''Well he was simply horribly burned, his arm, shoulder, back and side, and his face was slightly burned. The result of the burning, after the flesh had all sloughed out which was destroyed by the fire, had taken the skin and fasciae down to the muscle, and then taken part of the muscle out, so the blood vessels were exposed and some of the arteries were destroyed, so that it bled, and blood spurted out. I presume it was—well it must have been—from one to a half inch on his arm and on his back; on the shoulder it wasn't so great. The extent of the burn was about eight inches on the back, in width, and about twelve or fourteen inches in length. . . . I treated him from the 29th of October until about the 1st of April. I went to see him the whole portion of that year, running up into the following year in February. Those wounds were in a horrible condition, and he was suffering with absolute agony.'' Asked as to the probable result he said: ''Well, of course, to say to any degree of positiveness, a man couldn't do it, but inasmuch as that arm is in the condition it is, without any covering to the nerves and the blood vessels are lying just underneath the skin, and the blood vessels also, there is no flesh over them, and are simply covered by the skin, and no flesh over them visible to the naked eye; and an injury to a least degree to a nerve which goes to supply the blood vessels of that arm, and affords irrigation, may destroy the use of the arm, if any of the nerves are injured, and it is liable to happen. Of course, if it should, it would be almost a permanent loss of the arm.'' In addition to this and to the plaintiff's testimony as to his suffering

the court and jury saw the afflicted parts of the man's body. They were better judges of the extent of the damage and of what would be a just compensation than we are.

The judgment is affirmed. All concur.