DOLLIE E. SHORE, Respondent, v. AMERICAN BRIDGE COMPANY OF NEW YORK, Appellant.

**Kansas City Court of Appeals, March 27, 1905.**

1. **MASTER AND SERVANT: Negligence: Physical Facts: Conjecture.** In a controversy between a master and a servant physical facts showing a causal connection between the negligence and the injury excluded speculation and conjecture must not be permitted in aid of either party.

2. ———: ———: **Two Causes: Evidence.** Where an injury may have resulted from two causes, one making the master liable and the other not, the servant must show with reasonable certainty that the former produced the injury for which he is seeking damages; and if his evidence leaves it to conjecture he must fail in his action.

3. ———: **Working Place: Choice of Materials.** The master discharges his duties when he furnishes his servant suitable tools and appliances and will not be liable if the servant rejects them and selects less safe implements.

4. ———: **Fellow-Servant: Different Crews: Evidence.** A bridge boss had different crews for riveting bolts, which usually arranged their own scaffolds. On one occasion crew one was ordered to use a scaffold arranged by a member of crew two and finish the unfinished work of that crew, and in so doing a member of crew one was injured by a defect in the scaffold. *Held*, the member of crew one and of crew two were not fellow-servants as to the scaffold, and the fact that the member of crew two may have asked for certain materials in building the scaffold is no evidence against the members of crew one.

5. ———: **Place of Work: Assumption of Risk: Master's Negligence.** The servant assumes the risk incident to his employment but never the risk of his master's negligence, and when he uses implements knowing them to be unsafe, the question of contributory negligence arises and not that of the assumption of risk.

6. ———: ———: **Master's Method of Business: Care.** The rule which affords immunity to the master while conducting his business in his own way is confined within the limits of reasonable care.

7. ———: ———: **Scaffold: Evidence: Contributory Negligence.** On a review of the evidence it is held that the question of contributory negligence was for the jury.

8. ———: ———: ———: ———: Negligence. On a review of
the evidence it is held sufficient to send to the jury the ques-
tion of the negligence of a master in the materials used in con-
structing a bridge scaffold.

Appeal from Jackson Circuit Court.—*Hon. Shannon C.
Douglass,* Judge.

AFFIRMED.

*Porterfield, Sawyer & Conrad* for appellant.

(1) The defendant made timely objection to the
introduction of any evidence on the ground that the pe-
tition does not state facts sufficient to constitute a cause
of action. Anderson v. Box Co., 103 Mo. App. 382;
Lucey v. Oil Co., 129 Mo. 32; Bradley v. Railway, 138
Mo. 293. (2) Plaintiff failed to prove by evidence
that her deceased husband's fall from the scaffold was
caused by the negligence of the defendant. As to what
caused him to fall the evidence leaves us in the dark.
Warner v. Railway, 178 Mo. 123, 131-134; Cothron v.
Packing Co., 98 Mo. App. 343; Breen v. Cooperage Co.,
50 Mo. App. 202, 211-213; Brown v. L. & L. Co., 65 Mo.
App. 163, 166; Plefka v. Knapp, Stout & Co., 145 Mo.
316, 320, 321; Hudson v. Railway, 101 Mo. 13, 14;
Fuschs v. St. Louis, 167 Mo. l. c. 635. (3) The burden is
on plaintiff to show by evidence that the injuries to her
husband were caused by the negligence of defendant, or
to show facts from which it might be reasonably inferred
that the negligence of defendant caused the injuries to
plaintiff's husband. The record does not disclose the
cause of Mr. Shore's fall and the court erred in submit-
ting the case to the jury. Cothron v. Packing Co., 98
Mo. App. 343; Breen v. Cooperage Co., 50 Mo. App. 212;
Brown v. L. & L. Co., 65 Mo. App. 166; Holman v. Rail-
road, 62 Mo. 564; Plefka v. Knapp, Stout & Co., 145 Mo.
321. (4) The evidence does not show any causal con-
nection between the negligence charged in the petition

and the injury.    Brown v. L. & L. Co., 65 Mo. App. 166;
Nugent v. Milling Co., 130 Mo. 251.    (5)   The master
may choose his own method of or appliances for  doing
his work.    The law does not require him to use any par-
ticular kind of tools or appliances, or the best or safest
appliances.    Iron pipes are in  common use as needle
beams in bridge building.    They are safe appliances,
and lighter and more convenient to handle than wooden
needle beams.    The riveters prefer them over wooden
needle beams. Even if they are unsafe, if the servant vol-
untarily works with them, he assumes the risk in using
them.   ·Cothron v. Packing Co., 98 Mo. App. l. c. 349;
Holmes v. Brandenbaugh,  172 Mo. 53, 65; Minnier v.
Railway, 167 Mo. l. c. 113; Bradley v. Railway, 138 Mo.
293, 302-4; Blanton v. Dold, 109 Mo. 64, 74; Bohn v.
Railway, 106 Mo. 429 ; Berning v. Medart, 56 Mo. App.
l. c. 449; Jackson v. Railway, 104 Mo. 448.    (6)    Mr.
Shore was employed as a riveter.    His duties as such
required him to work on a swinging scaffold.   He knew
it was a dangerous service.   He knew the riveting crews
were using iron pipe for needle beams.    He used one of
them for days before he fell from the scaffold.    Even if
Mr. Shore was required by the defendant to use iron pipe
for needle beams, he knew how the work was  being done.
The risk of falling from the scaffold so constructed was
one ordinarily and usually incident to the work.    Hol-
mes v. Brandenbaugh, 172 Mo. l. c. 65; Bradley v. Rail-
road, 138 Mo. l. c. 302; Holloran v. Iron & Foundry Co.,
133 Mo. l. c. 477.    (7)   If the iron pipes were unsafe
appliances, they were unsafe only because they were
round.   They were obviously round, and therefore, if un-
safe, they were obviously unsafe.    It is difficult to con-
ceive of a case to which the doctrine of assumption of
risk would apply more fully  or more forcibly than
to this case.    Anderson v. Box Co., 103 Mo. App. 382,
385; Cothron v. Packing Co., 98 Mo. App. 343, 349; Wat-
son v. Coal Co., 52 Mo. App. l. c. 373 ; Berning v. Medart,

56 Mo. App. 473; Moore v. Mill Co., 55 Mo. App. l. c. 496; Lucey v. Oil Co., 129 Mo. 32, 40; Holloran v. Iron & Foundry Co., 133 Mo. 477-479; Steinhauser v. Spraul, 127 Mo. 541, 563, 564, cited and approved in these very recent cases: Roberts v. Telephone Co., 166 Mo. l. c. 379; Minnier v. Railway, 167 Mo. l. c. 113; Holmes v. Brandenbaugh, 172 Mo. l. c. 65. (8) It is not the duty of the master to warn the servant of dangers that are open and obvious. For patent dangers the master is not liable. Burnes v. Railway, Co., 129 Mo. 41, 51; Holmes v. Brandenbaugh, 172 Mo. 53, 65; Harff v. Green, 168 Mo. 308, 313; Holloran v. Iron & Foundry Co., 133 Mo. 477-480; Nugent v. Milling Co., 131 Mo. 245, 255, 256; Steinhauser v. Spraul, 127 Mo. 563-564; Fugler v. Bothe, 117 Mo. 475, 501; Breen v. Cooperage Co., 50 Mo. App. 204, 212. (9) Even if defendant knew that Mr. Shore was using iron pipe for needle beams and that they were unsafe, the uncontroverted evidence is that the deceased had the same knowledge. The latter had the same knowledge of the risk as defendant and used the pipes without objection. This being true, the demurrer should have been sustained. Watson v. Coal Co., 52 Mo. App. 373; Lucey v. Oil Co., 129 Mo. 40. (10) Mr. Shore personally, and with the assistance of the remainder of his crew, put the scaffold boards on the iron needle beams, and if one of them worked off, he, without the assistance of any one, worked it off and fell to the ground and was thereby injured. The needle beams upon which he put his boards were suspended unevenly, one higher than the other. (Rec., pp. 34, 35.) In all of this he was guilty of that degree of contributory negligence which should have compelled the court to sustain the demurrer. He made his own bed and he must lie in it. Nolan v. Shickle, 69 Mo. 336; O'Donnell v. Patton, 117 Mo. 13, 31; Bradley v. Railway, 138 Mo. l. c. 307.

*Poston & Rucker* and *Flournoy & Flournoy* for respondent.

(1)  The evidence was ample to show that the board fell because it slipped off the beam at one end and that thereby Shore fell and was killed.  Buesching v. Gas Co., 73 Mo. 219; Soeder v. Railway, 100 Mo. 673, 681; Fughler v. Bothe, 117 Mo. 475, 485; Schultz v. Moon, 33 Mo. App. 329; Lee Right v. Aherns, 60 Mo. App. 118.  (2)  The mere fact that the servant has knowledge of defective appliances or implements which he uses, will not prevent him from recovering for an injury received by reason of such defects, unless they are of such a character as to threaten immediate danger, or where it is reasonable to suppose that the appliance may be safely used by the exercise of care and caution.  Halliburton v. Railway, 58 Mo. App. 27, 33; Monahan v. Coal Co., 58 Mo. App. 68; Beard v. Car Co., 72 Mo. App. 583; Smith v. Coal Co., 75 Mo. App. 177; Booth v. Air Line, 76 Mo. App. 516; Devore v. Railway, 86 Mo. App. 431, 435; Thompson v. Railway, 86 Mo. App. 141; Cardwell v. Railway, 90 Mo. App. 31; Edwards v. Paving Co., 92 Mo. App. 221, 227; Nash v. Dowling, 93 Mo. App. 156, 163; Kane v. Falk Co., 93 Mo. App. 209, 216; Weldon v. Railway, 93 Mo. App. 668, 673; Haworth v. Railway, 94 Mo. App. 215, 221; Hester v. Packing Co., 95 Mo. App. 16; Prophet v. Kemper, 95 Mo. App. 219, 223; Adams v. Harvesting Co., 95 Mo. App. 111; Parsons v. Packing Co., 96 Mo. App. 372; Weston v. Mining Co., 78 S. W. 1044; Robbins v. Mining Co., 79 S. W. 480; Dean v. Wooden Ware Works, 80 S. W. 292; Carter v. Baldwin, 81 S. W. 204; Huhn v. Railway, 92 Mo. 440, 445; Stephens v. Railway, 96 Mo. 207, 212; Hamilton v. Mining Co., 108 Mo. 364, 375; O'Mellia v. Railway Co., 115 Mo. 205, 218; Settle v. Railway Co., 127 Mo. 336; Pauck v. Beef Co., 159 Mo. 467, 476; Hurst v. Railway, 163 Mo. 309, 319; Wendler v. Furnishing Co., 165 Mo. 527, 535; Curtis v. McNair, 173 Mo. 280; Cole v.

Transit Co., 81 S. W. 1138. (3) The servant must have knowledge not only of the defect but of the danger, and even then will not be precluded from recovery unless the danger is so glaring that there is no reasonable ground to suppose the defective appliance may be safely used with the exercise of care and caution. "This must be so patent that there can be but one conclusion in the minds of ordinary persons." Monahan v. Coal Co., 58 Mo. App. 69; Halliburton v. Railway, 58 Mo. App. 27; Smith v. Coal Co., 75 Mo. App. 177, 181; Devore v. Railway, 86 Mo. App. 429, 435; Cardwell v. Railway, 90 Mo. App. 31, 33; Edwards v. Asphalt Co., 92 Mo. App. 221, 227; Haworth v. Railway, 94 Mo. App. 215, 221; Robbins v. Mining Co., 79 S. W. 480; Dean v. Woodenware Works, 80 S. W. 292, 296; Carter v. Baldwin, 81 S. W. 204, 208; Pauck v. Beef Co., 159 Mo. 447; Settle v. Railway, 127 Mo..336; O'Mellia v. Railway, 115 Mo. 205. (4) If it is reasonable to suppose that by the exercise of great care the servant may escape injury in the use of the defective appliance, his knowledge of the defect does not preclude a recovery. Herriman v. Railway, 27 Mo. App. 435, 443; Adams v. Machine Co., 95 Mo. App. 111, 119; Stoddard v. Railway, 65 Mo. 514, 521; Huhn v. Railway, 92 Mo. 440, 447; Weston v. Mining Co., 78 S. W. 1044, quoting to this effect with approval: Stoddard v. Railway, 65 Mo. 514. (5) The master and servant do not stand upon an equal footing even when they have an equal knowledge of the danger and the servant has a right to rely upon the judgment of the master in furnishing him a tool or appliance. Halliburton v. Railway, 58 Mo. App. 27; Monahan v. Coal Co., 58 Mo. App. 68, 73; Smith v. Coal Co., 75 Mo. App. 177, 181; Thompson v. Railway, 86 Mo. App. 141, 149; Weldon v. Railway, 93 Mo. App. 668, 675; Hester v. Packing Co., 95 Mo. App. 28; Carter v. Baldwin, 81 S. W. 204, 207. (6) The question is, would a man of ordinary prudence, under the circumstances, have used

the defective appliance; would it be reasonable to think he could do so and escape injury by exercising care? In determining this the conduct of other workmen, similarly situated, in using the defective appliance is to be considered, as also is the fact of its use for quite a time prior to the accident without resulting harm. Smith v. Coal Co., 75 Mo. App. 177, 181; Booth v. Railway, 76 Mo. App. 516, 521; Adams v. Machine Co., 95 Mo. App. 111, 117. (7) The servant assumes the ordinary risks of an employment, never the risk of his master's negligence. An express contract will not relieve the master where he has been negligent. It is against public policy. Settle v. Railway, 127 Mo. 336; Pauck v. Beef Co., 159 Mo. 467; Cole v. Transit Co., 81 S. W. 204; Curtis v. McNair, 173 Mo. 280. (8) While there has been some conflict in the authorities, the principles of law applicable to a case of this kind seem now in this State well established. It is the application of the law to the facts which presents the most difficulty. The following cases present a state of facts strikingly analogous to the facts of the present case. Edwards v. Paving Co., 92 Mo. App. 221; Monahan v. Coal Co., 58 Mo. App. 68; Smith v. Coal Co., 75 Mo. App. 177; Cardwell v. Railway, 90 Mo. App. 31; Kane v. Falk Co., 93 Mo. App. 209; Weldon v. Railway, 93 Mo. App. 668; Haworth v. Railway, 94 Mo. App. 215; Hester v. Packing Co., 95 Mo. App. 16; Robbins v. Mining Co., 79 S. W. 480; Carter v. Baldwin, 81 S. W. 204; Cole v. Transit Co., 81 S. W. 1138; Dean v. Wooden Ware Works, 80 S. W. 292; Weston v. Mining Co., 78 S. W. 1044; Huhn v. Railway, 92 Mo. 440; O'Mellia v. Railway, 115 Mo. 205; Settle v. Railway, 127 Mo. 336; Pauck v. Beef Co., 159 Mo. 467; Wendler v. Furnishing Co., 165 Mo. 527.

JOHNSON, J.—Plaintiff sued to recover damages for the death of her husband, Muntford J. Shore, alleged to have been caused by the negligence of defendant. She

prevailed in the trial court. At the time of his death, October 25th, 1902, Shore was in the service of defendant at work upon an iron viaduct in process of construction on Allen avenue in Kansas City. He belonged to a crew consisting of himself and two other workmen engaged in riveting bolts. To perform the duties required of them, it was necessary for the men to work from the under side of the structure upon a scaffold suspended therefrom. Other members of the crew heated the rivets and held them in position. Shore did the driving using for that purpose a heavy hammer wielded with both hands. While so engaged he fell from the scaffold to the ground, a distance of some 28 feet, receiving injuries from which his death immediately resulted. The scaffold from which he fell was constructed in this manner: Two pieces of round iron pipe, each 18 or 20 feet long and about three and one-half inches in diameter, suspended from the structure by ropes attached to their ends, were swung parallel to each other about eight feet apart. Four boards, each 12 feet long, 1 foot wide and 2 inches thick, were laid across the pipes called needle beams in a manner to form a platform in area 8 feet by 4, upon which the men stood in performing their work. Each end of the boards projected two feet beyond the space enclosed by the needle beams. The boards were not attached to the beams, being held in place by their own weight and that of the load they carried. It is conceded the frequent shifting of the position of the scaffold required in the prosecution of the work made it impracticable to fasten the boards to the beams. It was customary for each riveting crew to build scaffolds for its own use, but in this instance Shore's crew was ordered to complete work begun by another, and under defendant's directions used needle beams suspened by the latter. The scaffold left by Shore which was built by him and his fellow workmen, differed from the one described in one respect: In-

stead of having the two iron pipes for needle beams, it had one pipe and one wooden beam about 20 feet long and 4 by 6 inches in its other dimensions.

The averments of the petition charging negligence are as follows: ". . . that defendant in disregard of its duty was negligent and failed to furnish said Shore with reasonably safe appliances with which to work in this, that defendant' negligently failed to furnish any timbers 4 by 4 or 4 by 6 inches through, and negligently failed to furnish any proper or suitable material for needle beams for the scaffold on which said Shore was at work on said October 25th, but, on the contrary, negligently and carelessly directed and caused said scaffolds and the scaffold on which said Shore was working to be constructed of needle beams of iron pipe . . . that said iron pipes were unfit for needle beams . . . and were an unsafe and dangerous appliance . . . for the reason that the boards of said scaffold when placed thereon were likely with the motion of the men at work . . . to slip or roll off, as they will not where timbers such as the one described above are used," etc. The answer in addition to a general denial pleaded assumption of risk and contributory negligence.

The complaints most earnestly pressed upon us relate to the action of the learned trial judge in overruling defendant's demurrer to the evidence. In the first place, it is said the evidence fails to support plaintiff's claim that the use of iron pipe for needle beams increased the danger over that involved in the use of wooden beams. This contention to be sustained must be based upon the assumption that the physical facts disclosed do not admit of the conclusion that the risk was enhanced, for the weight of the oral evidence greatly preponderated upon the side of an increase of danger. The length of the suspending ropes was at least seven or eight feet. The driver standing upon the platform delivering blows with a heavy hammer upon the structure above him necessarily communicated a swaying motion to the scaffold. It

appears too plain for discussion that with such continuous oscillation the boards would undergo gradual displacement in any kind of construction which left them unfastened to the beams. It is equally as clear such tendency to move and slip would be far more certain and pronounced with the boards resting upon a mere line of contact with a hard smooth substance than would be the case if they had for their support a rough surface several inches in width. A number of witnesses testified that proper construction required the use of wooden beams. We are not justified in disregarding their testimony, which would have to be done should we declare, as a matter of law, the construction reasonably safe for the purposes for which it was intended.

Further, it is said the evidence fails to connect the defect in the beams with the injury: that under the facts disclosed the fall may be attributed to any one of a number of causes independent of the one charged. None of the men who worked with Shore was introduced as a witness. Only one witness whose testimony was offered saw him fall. When this witness's attention was first attracted, Shore had left the scaffold in his descent— was in mid air. The position of his body indicated he had fallen *between the needle beams*. One of the platform boards also fell from the scaffold between the needle beams at the same time; just when, with relation to Shore's precipitation, is not shown, but the unfortunate man was first to reach the ground and received his mortal injury from the striking of his body by the falling board. The facts are sufficient to show the proximate cause of the fall was the slipping of the boards which fell until one end thereof was deprived of support, as the result either of a gradual displacement of the board or the sudden rolling of the pipes. To attribute the fall to any other cause would be the result of mere conjecture and speculation. The fact that Shore and the board both fell between the beams and not outside of them makes it difficult to believe that he accidentally stum-

bled or inadvertently stepped on the projecting end of the board; or that in delivering a blow, his hammer caught in some part of the overhead construction, all of which are suggested as possible happenings. It is true, the burden is upon plaintiff to show the existence of the negligent act and injury directly resulting therefrom and mere proof alone of negligence and injury is not sufficient without evidence tending to establish a connection between them. But when facts and circumstances are shown from which with reasonable certainty the existence of such elemental fact may be inferred, the burden of proof is sustained. Frequently, it occurs that what are termed physical facts speak more accurately and truthfully than the tongues of living witnesses, and when such facts show a causal connection between negligence and injury, speculation should not be indulged to defeat plaintiff's right of recovery. Conjecture is not permissible in aid of either party. Nothing said is inconsistent with the rule followed in the line of decisions cited by defendant, of which Warner v. Railway, 178 Mo. 125, may be taken as a type.

"If the injury may have resulted from one of two causes for one of which and not the other the defendant is liable, the plaintiff must show with reasonable certainty that the cause for which the defendant is liable produced the result, and if the evidence leaves it to conjecture the plaintiff must fail in his action." Applying this rule, we say the plaintiff has shown the necessary connection between negligence and injury. Her evidence leaves no room for the conclusion that the injury may have resulted from causes not produced by the negligent act.

Also, it is urged the riveting crews, including the one to which Shore belonged, themselves selected the pipes for beams in preference to timbers, of which it is said defendant had a supply on hand suitable for that purpose. It is conceded the riveting crews as a rule made their own scaffolds, and it may be inferred they

were as well qualified as the master to judge of the sufficiency of the material offered. If they were given the choice by defendant between proper material and iron pipes and selected the latter for any reason, we would not hesitate in holding Shore guilty of contributory negligence. The master discharges his duty to the servant when he furnishes him with suitable tools and appliances, and will not be held liable if the servant rejects them for others less safe and is injured thereby. Without detailing the evidence, it appears from the testimony of some of the witnesses that defendant had no material at hand suitable for wooden beams prior to Shore's death, and that iron pipes were used pursuant to the orders of defendant. This testimony was contradicted by evidence introduced by defendant, but in considering the questions presented by a demurrer, we must except the evidence in favor of plaintiff. It is true, the witness, Boswell, offered by plaintiff, a member of the crew that built the scaffold from which Shore fell, admitted asking permission of defendant to use iron pipe; but we do not understand the request was made on account of preference for that material, but because, as claimed, there was no suitable material available. There is no evidence in the record relating to instructions of defendant to Shore's crew with respect to the selection of needle beams, nor of any permission asked by them to use iron pipe. Shore was ordered by defendant to use needle beams previously suspended by another crew, and defendant's liability is based upon its negligence in failing to provide its servant with a reasonably safe place in which to work, as well as upon that in failing to provide proper material for scaffolds. Boswell was not a fellow servant with Shore in the matter of construction of the defective scaffold (Bowen v. Railway, 95 Mo. 277; Russ v. Railway, 112 Mo. 53); nor do we think the fact, if it existed, that he asked permission to use defective beams from preference, and not of necessity, is

any evidence of similar negligence on the part of Shore. With respect to such negligence, the burden of proof was upon defendant to establish its existence. We fail to find any evidence in the record from which it may be inferred.

Defendant insists that the increased danger, if any, involved in the use of pipe for needle beams, was as open to the observation of Shore as to that of defendant. That the defect was patent, and in consenting to work in a place known to him to be more dangerous than one of proper construction without objection, Shore, by implication of law, agreed to assume the increased risk of injury. In Pauck v. Beef, etc., Co., 159 Mo. 467, both master and servant knew of the defective condition of the machine; the servant made no complaint; the master no promise to repair, no assurance of safety. The court held the fact of the master's negligence excluded the assumption of an implied agreement on the part of the servant to assume the risk as one incidental to the employment. In Curtis v. McNair, 173 Mo. 280, it was said: "A risk which the law on the ground of public policy wil not allow the servant to assume it will not imply from his conduct that he has assumed. *The servant never assumes the risk of the master's negligence.*" In Cole v. Transit Co., 81 S. W. 1142, the Supreme Court very pertinently stated the rule in the following language: "The servant assumes the risk of the danger incident to the employment, but he never assumes the risk of the master's negligence. If his master furnishes him unsafe implements and he uses them *knowing them to be unsafe, a question of contributory negligence arises but not of assumption of the risk.*" In Smith v. Coal Co., 75 Mo. App. 177, the servant, a miner, knew of the defective condition of the roof to the passageway in the mine, suggested to the foreman that it should be repaired and was told that the repairs would not be made. The lurking danger was admitted by the foreman, who based his refusal to repair on the ground that the owner was

objecting to so much expense.    The servant continued to use the passage and was injured as the result of the defective roof.    We refused in that case to apply the doctrine of assumed risk.

It must be confessed that cases are plentiful in this and other states in which a different rule has been followed.    It has been held that where the danger is apparent to master and man alike, the risk is assumed regardless of the presence in the case of the master's negligence; but in the recent decision noted, prevailing opinion inclines to the view that the existence of the master's negligence excludes the implication of an assumption of risk on the part of the servant.    The scope of the rule which affords immunity to the master while conducting his business in his own way is confined within the limits of reasonable care.    Other cases sustaining this view are as follows:   Blanton v. Dold, 109 Mo. 64; Settle v. Railway, 127 Mo. 336; Wendler v. People's Co., 165 Mo. 527; Hurst v. Railway, 163 Mo. 309; Hamman v. Coal Co., 156 Mo. 232; Weldon v. Railway, 93 Mo. App. 668; Carwell v. Railway, 90 Mo. App. 31; Monahan v. Coal Co., 58 Mo. App. 68; Edwards v. Paving Co., 92 Mo. App. 221; Huhn v. Railway, 92 Mo. 440.

With assumed risk out of the case, the final question for determination is that of contributory negligence.    Did the use of the defective needle beams with knowledge of the attendant danger warrant us in holding, as a matter of law, that Shore was guilty of contributory negligence?   We think not.   Ordinarily, this is a question of fact to be submitted to the jury.   Unless it can be said the danger was so great as to threaten immediate injury, we should not interfere.   See authorities cited above.   The several riveting crews had been using pipes for needle beams during the progress of the work, without injury.   Before he fell, Shore had been working five hours upon the platform.   These facts presented an issue for the consideration of the jury.   We

cannot say that the danger, though obvious, was of such a degree that the servant was not justified in the belief that he could work in safety with the exercise of care and caution.

We conclude the learned trial judge committed no error in refusing the demurrer to the evidence.

All of the other points made by defendant are fully covered in the views expressed. The judgment is affirmed. All concur.