## W. M. ERWIN, Respondent, v. MISSOURI AND KANSAS TELEPHONE COMPANY, Appellant.

### Springfield Court of Appeals, July 28, 1913.

1. **APPEAL AND ERROR: Motion to Affirm Judgment: Notice Required.** Sec. 2049, R. S. Mo. 1909, gives Courts of Appeal authority to make rules for carrying into effect the provision of sections 2047 and 2048, said statutes, requiring appellant to file a transcript of the record, or a certified copy of the judgment, etc., at least fifteen days before the first day of the return term of the appeal and for affirmance of the judgment for failure to do so. Rule 25 of the Springfield Court of Appeals was adopted under the provisions of section 2049 and requires respondent to give the appellant five days' written notice of his intention to file a motion to affirm for appellant's said failure. *Held*, the provisions of the rule are as mandatory as the statute, and when respondent fails to give the notice required, a motion to affirm the judgment for failure will be denied.

2. ———: **Appeal Pending: No Writ of Error.** Appellant cannot have a writ of error while the appeal is pending in the same case.

3. ———: **Appeal Filed Too Late: Affirmance of Judgment: No Writ of Error.** A judgment having been affirmed for failure to file the appeal in time, a review by writ of error cannot be thereafter had.

4. ———: **Dismissal by Appellant: Motion by Respondent to Affirm Pending.** An appeal cannot be dismissed by appellant after respondent has filed his motion to affirm for the failure of appellant to file transcript in time.

5. ———: **Affirmance for Failure to File: Requirements of Respondent.** Affirmance of a judgment for failure of appellant to file transcript in time does not necessarily follow because of such failure; to secure it respondent must himself do all that is required of him.

6. ———: **Failure to File: Motion to Dismiss: Denied, When.** Respondent, under Rule 21 of the Springfield Court of Appeals, requested that the appeal be dismissed for appellant's failure to make such timely filing. Where it appears that appellant is barred by lapse of time from proceeding by writ of error and that the pendency of respondent's motion to affirm and a continuance of the matter by the court, without notice to the parties and without ruling on the motion, had prevented appellant from asking such writ and had cut off his alloted time therefor, *held* that the court is permitted to exercise a sound discretion in ruling on the request and that it will be overruled.

7. **MASTER AND SERVANT: Action for Negligence: Pleading: Sufficiency of Petition.** The petition, in an action against a telephone company for injuries to an employee, is reviewed and examined relative to the charge of negligence against the employer in not providing a safe place to work and in selecting the more dangerous method of work. *Held* sufficient against a demurrer, objection to evidence and motion in arrest.

8. ———: **Injuries to Servant: Petition.** A petition charging negligence against a master in selecting the more dangerous way for certain work, should allege that such more dangerous way is not a reasonably safe way.

9. ———: **Contributory Negligence: Question for Jury, When.** In an action by the servant against the master for negligence, if the hazard involved in the conduct of the servant is one about which reasonable minds would differ, the question of contributory negligence is one for the jury.

10. ————: Injuries to Servant: Contributory Negligence: For Jury. No open, glaring and imminent danger appearing, where the evidence tends to show the supervision and presence of the foreman of the master, such fact should be considered in determining whether or not the issue of contributory negligence is a question for the jury.

11. ————: Master's Superior Knowledge: Reliance on by Servant. A servant is not required to search for danger. He is warranted in relying somewhat upon the superior knowledge of the master.

12. ————: Defective Appliances: Knowledge of Danger: Defeats Action, When. Mere knowledge of the dangers in working with a defective instrumentality will not defeat an action by a servant against a master for negligence, unless the danger was so glaring as to threaten immediate danger.

13. ————: Injuries to Servant: Contributory Negligence: For Jury. Where a telephone employee was injured by a tree, which he was attempting to top, falling on him, the evidence is reviewed and examined. *Held*, to require the submission to the jury of the question of the servant's contributory negligence.

14. ————: Negligence of Master: Assumption of Risk. A servant does not assume any risks caused by the master's negligence.

15. ————: Unsafe Method of Work: Selected by Master: No Assumption of Risk by Servant. A servant does not assume the risks occasioned by the master's failure to exercise due care in selecting the method by which the work is to be done.

16. ————: Safe Place for Work: Duty to Provide. Plaintiff, with other servants of the defendant telephone company, was going from place to place along the company's line removing obstructions from the wires, the foreman of the company directing the work. *Held*, that the company was liable for failure of the foreman to exercise reasonable care in providing a safe place to work.

17. ————: Acts of Foreman or Fellow-servants: Question for Jury. The foreman of defendant company ordered the telephone gang to top a tree and pull the top over onto a bridge with ropes, but did not go into details concerning the work which was done under his supervision. *Held*, that the acts of the men in pulling the top over onto the bridge whereby the plaintiff was injured could not, as a matter of law, be said to be the act of his fellow-servants and not of the foreman.

18. INSTRUCTIONS: Foreman's Negligence: Instruction Construed. Where under the instructions of the court the jury

was required to find that the plaintiff was injured as a direct result of the negligence of the foreman, a verdict for plaintiff precludes the idea that the injuries were the result of the negligence of fellow-servants.

19. ————: Negligence of Fellow-servants. In the case above no direct instruction on the fellow-servant principle was necessary.

20. ————: On Method of Work: Incompleteness of. In an action by the servant for personal injuries, an instruction permitted recovery if the jury found that the master's foreman had selected the more dangerous method of work or furnished an unsafe place for work, did not require the additional finding that "the more dangerous method" was not a reasonably safe method. *Held*, reversible error.

21. MASTER AND SERVANT: Method of Work: Reasonably Safe: Risks. If the method of work which the master adopts is a reasonably safe way, the master, in that respect, is within the law. There can be no recovery for injuries to a servant in consequence thereof, the risks of such injuries being among those assumed by the servant in the employment.

22. INSTRUCTIONS: Misleading. Where in connection with the issue of contributory negligence an instruction was given permitting recovery, "unless the defendant has proved, etc. . . ."—the defendant not having introduced any evidence whatever—*held* misleading.

Appeal from Barry County Circuit Court.—*Hon. Carr McNatt*, Judge.

REVERSED AND REMANDED.

*Charles L. Henson*, Special Judge.

*J. S. Davis, J. W. Gleed, D. E. Palmer, J. L. Hunt* and *G. M. Sebree* for appellants.

(1) The equipment used was of the simplest kind and the dangers were obvious. Beckman v. Brewing Association, 98 Mo. App. 555. (2) Plaintiff was guilty of contributory negligence. Dodds v. Coke Co., 115 Mo. App. 501; Whaley v. Coleman, 113 Mo. App. 598; Knorpp v. Wagner, 195 Mo. 637; Myers v. Glass

Co., 127 Mo. App. 557; Schiller v. Breweries Co., 156 Mo. App. 569. (3) An employer may conduct his own business in his own way, if that way is not unlawful. Letanovsky v. Shoe Co., 157 Mo. App. 120; Schiller v. Breweries Co., 156 Mo. App. 569; Brandt v. Breweries Co., 159 Mo. App. 568; Bradley v. Railroad, 138 Mo. 293; Minnier v. Railroad, 167. Mo. 99; Claybaugh v. Railroad, 56 Mo. App. 630. (4) The servant who enters upon the performance of work without objection to the method selected by the master assumes risk of injury incident to that method of doing the work. Letanovsky v. Shoe Co., 157 Mo. App. 120; Bradley v. Railroad, 138 Mo. 293. (5) Where the place to work is not permanent, the rules regarding the duty of the master to furnish a safe place to work do not apply. Meehan v. Railroad, 90 S. W. Mo. 102; Gibson v. Bridge Co., 112 Mo. App. 594; Tweed v. Telephone Co., 114 N. Y. Supp. 607; Slagle v. Village, 139 Ill. App. 423. (6) In placing the plank and preparing the place to work, plaintiff and the other members of the gang were fellow-servants. Bowen v. Railroad, 95 Mo. 268; Forbes v. Dunnevant, 198 Mo. 193; Herbert v. Wiggins 107. Mo. App. 287, 299. (7) Plaintiff's second instruction permitted a verdict on no other ground than that defendant did its work in a manner in which it was authorized to do it. For that reason it is grossly erroneous. Wilkes v. Railroad, 159 Mo. App. 711-726; Monroe v. M'f'g. Co., 133 S. W. 214; Steinmann v. Transit Co., 116 Mo. App. 673. (8) The court overlooked in this instruction the fact that there was involved only a temporary and changing place to work. This fact should have been noticed in the instruction. Gibson v. Bridge Co., 112 Mo. 594, 599; Bradley v. Railroad, 138 Mo. 307. (9) The instruction attempted to cover the whole case and authorize a verdict. The question of assumption of risk should therefore have been covered by it. Tabler v. Railroad 93 Mo. 579; Dale v. Railroad Co., 63 Mo. 455; Moore v.

Miller .Co., 55 Mo. App. 491. (10) Plaintiff's fifth instruction told the jury that plaintiff could recover unless the danger was so obvious that a reasonably prudent man would have quit the service rather than obey the foreman's order. This is not the test. Delo v. Mining Co., 160 Mo. App. 38, 44. (11) The court refused to instruct the jury as to the fellow-servant rule. This was error. Kaminski v. Iron Works, 167 Mo. 462. (12) Where the failure to file the transcript in time was due to a misunderstanding between appellant's counsel and the clerk, and did not result in delaying the hearing, the judgment will not be affirmed. Kamerick v. Castleman, 21 Mo. App. 587; State ex rel. v. Gage, 50 Mo. App. 201; Land & Inv. Co. v. Martin, 125 Mo. 114.

*Sizer & Kemp* for respondent.

(1) This case should be affirmed: 1st. Because appellant has failed to perfect its appeal in the manner provided by Sec. 2047, R. S. 1909. 2nd. Because appellant has failed to comply with Rules 12, 14, 15, 16 and 18 of this court. Columbus v. Coal Co., 144 Mo. App. 228; Caldwell v. Hawkins, 46 Mo. 263; Kamerick v. Castleman, 21 Mo. App. 592; Springfield Ins. Co. v. Harrison, 21 Mo. App. 306; Ott v. Spiker, 144 Mo. App. 347; Hinshaw v. Warren's Estate, 162 Mo. App. 280. (2) Respondent has waived no right to have this judgment affirmed on motion, by waiting to file his motion until after appellant had printed its abstract of record, and filed same in this court. McCollister v. Railroad, 129 Mo. App. 321; Ziefle v. Seid, 137 Mo. 541. (3) The appellant, having ignored the statute and the rules of this court, furnishes ample and just reasons for an affirmance; but, should this court refuse to affirm, then the appeal should be dismissed. Hinshaw v. Warren's Estate, supra; Ott v.

Spiker, 144 Mo. App. 345. (4) Appellant asked no instruction on the theory of a safer way and no evidence was elicited on that theory and this court will not allow this case to go off on a theory not tried in the lower court. Masterson v. Transit Co., 204 Mo. 507, 521; Chandler v. Gloyd, 217 Mo. 416; O'Keefe v. Railroad, 124 Mo. App. 619; Carey v. St. Car Co., 125 Mo. App. 193; Nicket v. Railroad, 135 Mo. App. 671; Mitchell v. Railroad, 125 Mo. App. 11. (5) The question of contributory negligence is generally a jury question, and unless the danger was so glaring and imminent an appellate court will not interfere with the jury's finding on that fact. Corby v. Tel. Co., 232 Mo. 417; Shore v. Bridge Co., 111 Mo. App. 291; Millsap v. Beggs, 122 Mo. App. 7; Johnson v. Frisco, 160 Mo. App. 77; Curtis v. McNair, 173 Mo. 270. (6) Where the master retains through his foreman active control and supervision of the work, the servant's duty is to obey the foreman's orders and he has a right to rely upon the superior knowledge of the foreman and can rely on the fact that the master has performed his duty and that the place and manner of doing the work in conformity with orders are reasonably safe. Bloomfield v. Wooster Co., 118 Mo. App. 259; Hall v. Railroad, 165 Mo. App. 114, 145 S. W. 1170; Jarrell v. Coal Co., 154 Mo. App. 552; Smith v. K. C., 125 Mo. App. 150; Herdler v. Stove Co., 136 Mo. 3. (7) While it is true the master can conduct his business in his own way, yet that doctrine is restricted in its application by a very important qualification. He must always remain within the boundaries of reasonable care. Mack v. Railroad, 123 Mo. App. 536; Curtis v. McNair, 173 Mo. 283; Jarrel v. Coal Co., 154 Mo. App. 558; Brandt v. Breweries Co., 159 Mo. App. 573. (8) Defendant company owed a duty to his men to furnish a reasonably safe place to work, although that place was shifting. Corby v. Tel. Co., 231 Mo. 417; Jarrell v. Coal Co., 154 Mo. App. 552. (9) The fellow-servant doctrine is

not applicable because the foreman selected the board for the plaintiff to stand on and ordered it placed as it was placed.   Combs v. Construction Co., 205 Mo. 382, Reeder v. Lime Co., 129 Mo. App. 112; White v. Railroad, 156 Mo. App. 563.   (10) There was no assumption of risk by plaintiff for a servant never assumes risks incident to the master's negligence.   Holman v. Iron Co., 152 Mo. App. 685; Wiley v. Gass Co., 132 Mo. App. 380; Warren v. Railroad, 113 Mo. App. 498; Tinkle v. Railroad, 212 Mo. 468.   (11)   Plaintiff's second instruction was properly given.   Murphy v. Street Railway, 125 Mo. App. 275; Gilber v. Car Co., 129 Mo. App. 93; Laforce v. Ins. Co., 43 Mo. App. 518-533; Corby v. Tel. Co., 231 Mo. 436; Gamache v. Tin Foil Co., 116 Mo. App. 601.   (12)   Plaintiff's fifth instruction, complained of by appellant, has been approved by the Supreme Court.   Corby v. Tel Co., 231 Mo. 428; Burkhard v. H. & M. Co., 221 Mo. 708. (13)   Instruction 12 was properly refused because the negligence in this case was plainly the negligence of the master, as he was present and directing the work, and whatever was done was at the master's bidding. Knight v. Donnely Bros., 131 Mo. App. 161; Combs v. Const. Co., 205 Mo. 382; Reeder v. Lime Co., 129 Mo. App. 112; White v. Railroad, 156 Mo. App. 563. (14)   The Supreme Court and Courts of Appeal shall not reverse the judgment of any court, unless it shall believe that error was committed by such court against the appellant or plaintiff in error, materially affecting the merits of the action.   Sec. 2082, R. S. 1909; Mann v. Duerr, 222 Mo. 1-15; Freeland v. Williamson, 220 Mo. 217; George v. Railroad, 225 Mo. 399.

CHARLES L. HENSON, Special Judge.—Judge FARRINGTON, having been of counsel in this cause, disqualified, and it was argued and submitted to Presiding Judge ROBERTSON and Judge STURGIS.   They were unable to agree upon the disposition to be made of the

cause, whereupon Charles L. Henson, of Mount Vernon, was agreed upon and chosen as special judge herein. The cause was then reargued, and submitted to the court as thus constituted.

## ON THE MOTION TO AFFIRM THE JUDGMENT.

1. We are confronted, at the very outset, with respondent's motion to affirm the judgment, because of appellant's failure to file, in this court, at least fifteen days before the first day of the March term, 1912, of this court, a transcript of the record and proceedings of the circuit court or a certified copy of the record entry of the judgment appealed from together with the order granting the appeal. Every reason set out in the motion relates to the one just stated and it is unnecessary to repeat them. Accompanying the motion is a certified copy of records, made by the clerk of the court in which the appeal was granted, which we will treat as a sufficient "certificate" as required by section 2047, Revised Statutes 1909. The motion is also accompanied by a notice from respondent to the appellant of his intention to *file* said motion in this court on October 22, 1912. "or as soon thereafter as a hearing can be had." Copies of the motion and of the notice were served on appellant's attorney of record on October 16, 1912. The motion, with the accompanying certificate, the notice, and evidence of service of each, were all filed in the office of the clerk of this court on October 18, 1912.

On December 5, 1911, this appeal was granted, the docket fee of this court paid to the circuit clerk and appellant was given, by an order of record, till the third day of the March term, 1912, of the circuit court in which to file its bill of exceptions. The first day of the March term of this court, 1912, was March 4th, and the first day of the March term of the Barry circuit court, 1912, was March 18th. A further exten-

sion, within said time, was given appellant, to file his bill of exceptions, and within the time of such extension, to-wit, on July 8, 1912, the bill of exceptions was filed.

The first filing ever made in this court was on June 8, 1912, when appellant filed in the office of the clerk of this court a certified copy of the judgment appealed from and of the order granting the appeal, which certified copy was under the hand and seal of the circuit clerk June 7th, 1912.

The cause appeared on the docket of the October term, 1912, of this court, for hearing November 12, 1912. On September 23, 1912, appellant served its abstract of the record on respondent and four days later filed sufficient copies thereof here. On October 18, 1912, respondent so filed the motion to affirm, as stated, and the same day appellant served respondent with its brief and three days later filed sufficient copies here.

On November 5, 1912, the respondent served its brief (covering both the motion to affirm and the merits) on appellant and three days later filed sufficient copies thereof here. The brief contains a request that; if we shall refuse to affirm the judgment, to then dismiss the appeal.

On November 7, 1912, without notice, appellant filed in the office of the clerk of this court, the affidavit of one of its attorneys tending to explain its failure to file the certified copy of the judgment and of the order granting the appeal till June 8, 1912.

On November 11, 1912, this court made a general order continuing in groups, by reference to their serial number, all cases pending here and not submitted, to various days of the January Call, 1912, of this court. This case, bearing number 892, was included in the group which went over to January 7, 1913, and it so went over on said order, without any disposition of either the motion to affirm the judgment or the re-

quest contained in the respondent's brief that the appeal be dismissed. No one was present representing either side of this controversy when the continuance was made, and it was done without any notice of intention to do so, previously given to either side.

Early in January, 1913, the respondent filed affidavits of the circuit clerk and of his deputy which contradict the one filed by appellant. All the affidavits are filed here, for the purpose, no doubt, of disposing of an issue of "good cause," applicable to motions to affirm, and mentioned in section 2047, Revised Statutes 1909. They might be material to such an issue, but as we dispose of the motion independently of that issue we will not set out such affidavits.

This appeal, granted December 5, 1911, was returnable to the March term, 1912, of this court (Sec. 2047, R. S. Mo. 1909.), and there should have been filed in the office of the clerk of this court, at least fifteen days before the first day of that term, a perfect transcript of the record and proceedings of the circuit court in this cause, or, in lieu thereof, a certified copy of the record entry of the judgment appealed from together with the order granting the appeal. [Sec. 2048, said statutes.] Said section 2047 provides that where such filing has not been made within the time prescribed by said section 2048, and respondent shall do certain things therein specified (and which respondent has done in this case) the court *shall affirm* the judgment, unless good cause to the contrary be shown. The *rules* of this court do not provide for the judgment to be *affirmed* for such failure to file the appeal here, but, at their worst, that the appeal shall be dismissed. [Rule 21.]

Section 2049, Revised Statutes 1909, took its present form, providing that the supreme and appellate courts shall make and promulgate rules and regulations for carrying into effect the provisions of section 2047 as well as 2048, by an amendment which went

into effect on the same day (Aug. 16, 1909) this court was created under the law. Three days later this court made and promulgated its rules, among which is Rule 25, which was within the power of this court to make at the time. That rule provides that respondent, desiring to *file* a motion to affirm the judgment or to dismiss an appeal, shall notify the adverse party, or his attorney of record, in writing, of his intention to *file* said motion, at least five days before the same is *filed*, and shall accompany the notice with a copy of the motion, and the court will require satisfactory proof that the notice has been given. [Back of Vols. 138 Mo. Appeal Report, *et. seq.*]

The *power* to affirm a judgment for such a failure rests alone upon the statute, 2047, and the *terms* and *conditions* upon which it will be done upon the rule, 25.

We believe one of the reasons why Rule 25 was adopted is for the purpose of giving the appellant the opportunity, after notice of intention to move for an affirmance or to dismiss an appeal, has been served upon him, to dismiss the appeal himself before the motion is *filed* here, if it be one for affirmance, or to let it be speedily dismissed by the court, with his full knowledge, if the motion be to dismiss the appeal, to the end, if appellant so wishes and has the time under section 2056, to seek a review, by a writ of error, of the record and proceedings involved. This for these reasons: Appellant cannot have a writ of error while the appeal is pending in the same cause. [Harris v. Chitwood, 210 Mo. 560.] Nor may he have the benefit of review by a writ of error once the judgment is affirmed for failure to file the appeal here in time. [Padgett v. Smith, 205 Mo. 122.] Nor may he dismiss his appeal after respondent has *filed* his motion to affirm for the failure, complying with the conditions of section 2047, and Rule 25. [Thoms v. Sullivan, 79 Mo. App. 384.]

In support of his motion to affirm, the respondent cites three cases decided by this court, only one of which (Columbus Coal Co. v. Mitchell, 144 Mo. App. 228) was on a motion to affirm, the others being on motions to dismiss the appeal. In all of them Rule 25 was complied with, and in another case, State ex. rel O'Malley v. Musick, 145 Mo. App. 33, where Rule 25 was not complied with, this court held that it was not *obliged* to consider the motion.

The Supreme Court does not seem to regard the provisions of 2047, to affirm for failure, as being mandatory. [Reinauer v. Railroad, 210 Mo. 109, en Banc, with only one dissent.] The opinion discusses only another statute, but the fact stands out in the opinion that the court was asked, by motion based on the statute (2047), to affirm the judgment for appellant's failure to file the appeal till December 5 after the appeal was granted June 26, 1907, and it did not do so, but overruled the motion. And it has been held that affirmance will not be ordered, although the appellant failed to file the appeal in time, unless the respondent has complied with *his* part of the statute (2047), by furnishing the required certificate. [Kronck v. Reid, 105 Mo. App. 430.] Affirmance for failure, therefore, does not seem to go as a matter of course and merely because of appellant's failure, but, to secure it, the respondent must do *everything* required of him.

We pause to point out the new statute (Laws 1911, p. 139), providing for a continuance here, for a sufficient time to enable appellant to have the bill of exceptions allowed and filed below, on the certificate of the trial judge that the bill cannot be allowed and filed before appellant is required under the rules of the court to serve his abstract of the record. In view of that statute and the State of this record showing that appellant's bill of exceptions had not been allowed and filed till July 8, 1912, this cause could not have been *finally* set for hearing or have been heard any sooner

than November 12, 1912, and the failure to sooner file the appeal here than June 8, 1912, has not delayed the final determination of this cause, or caused respondent any injury in consequence. Nor do we see anything calling for the exercise of a discretion in us *not* to enforce the provisions and requirements of Rule 25, if in view of its direct and close connection with section 2047 any such discretion exists.

Except for the failure mentioned, the appellant has done everything required by law and the rules of this court to have its appeal heard, and for this failure alone respondent urges the penalty of affirmance, without himself complying with the wholesome provisions of the rule which provides the terms and conditions upon which this court may invoke such penalty. It is written: "He that killeth with the sword shall be killed by the sword." [Rev. 13:10.]

If the provisions of section 2047, to affirm for the failure, are mandatory, as respondent urges, the provisions of Rule 25 are as much so. Appellant has failed to comply with the statute in the respect stated, but respondent, in order to have any advantage of that failure, should have complied with the rule mentioned. He did not do so, because on October 16 he served notice of intention to *file* the motion on October 22, and prematurely *filed* it on October 18, and we overrule the motion to affirm.

## ON THE REQUEST TO DISMISS THE APPEAL.

II. We are asked, in respondent's brief served November 5 and filed here November 8, and in the oral argument at this bar, to dismiss this appeal, under Rule 21 of this court, in the event we shall overrule the motion to affirm. Violation of Rule 18, for not filing a brief alleging the errors committed by the trial court, is one reason urged. The brief served and filed by appellant is sufficient in this respect. Another reason

urged is failure to comply with Rule 16, which relates to the same failure to file the appeal timely as we discussed in preceding paragraphs.

If the request to dismiss this appeal can be construed as a *motion* then it must be overruled for failure to comply with Rule 25 discussed in the preceding paragraphs.    The two cases cited by respondent in support of the request (Hinshaw v. Warren, 162 Mo. App. 280 and Ott v. Spiker, 144 Mo. App. 345) were on *motions* and were sustained at a time when writ of error was yet available, while here the time for the writ, as a means of review open to appellant, has expired.    Respondent, by prematurely filing his motion to affirm, and this court, by continuing the case without action on the motion (during which time appellant could not have a writ of error, Harris v. Chitwood, supra) to a time more than a year after rendition of the judgment (Sec. 2056), cut off the last forty-two days allowed appellant to seek the writ of error.    We are permitted to exercise a sound discretion in such a *request* to dismiss an appeal.    [Gaar, Scott & Co. v. Nelson, 166 Mo. App. 51.]

On November 11, 1912, the day before the case was set for hearing, our predecessors, without notice to those interested, continued this cause to January 7, 1913, without any action on the motion to affirm or the request to dismiss the appeal, and held no session on November 12th when the cause was to have been heard.    Where, in such a situation, the appellant was left where it could neither dismiss its appeal, nor move the court to strike out the motion to affirm because prematurely filed, and succeeding, to then dismiss its appeal, in time to sue out the writ of error, we are disposed to treat the action of the court, in continuing the cause in that condition, either as its election to overrule the request to dismiss the appeal, or as its election to overrule the request to dismiss the appeal, or as an inadvertence calling for the exercise of a

sound discretion in us to extricate the appellant, thus
tethered, from a situation brought about by such inad-
vertence of the court. We therefore overrule the re-
quest to dismiss the appeal, and will consider the case
on the merits.

STATEMENT OF THE MERITS. The petition was
filed October 12, 1911, and, among other things, charged
that the defendant was a telephone company owning
and operating lines of telephone in Missouri, Kansas
and elsehwere, and that on June 28, 1911, the plaintiff
was in the employ of the defendant, as a groundsman,
the duties of which required him to assist the linemen
in removing obstructions from, and repairing, the
lines. That during all the time of his employment he,
and the other coworkers, were under the control and
supervision of one Minor Shaw who was the defen-
dant's foreman. The petition then charged that it was
the duty of the defendant to exercise ordinary care to
furnish plaintiff with reasonably safe tools and appli-
ances with which to work and a reasonably safe place
to work, and "*to exercise ordinary care not to order plain-
tiff to discharge his duties or perform his work in a dan-
gerous way, but it was the duty of the defendant, when
ordering plaintiff to perform his different duties, to order
same done in the safer way, when there were two ways of
performing such duties, one a safe way, and the other a
more dangerous way.*"

A neglect of such duties was charged and that as a
direct result of the negligence of the defendant through
its agents, servants and employees, the plaintiff was
injured in a manner detailed, and substantially thus:
The plaintiff and other coworkers were under the super-
vision of defendant's foreman, Minor Shaw, on said
day, going over one of defendant's lines, and were
ordered by the foreman to cut a certain tree near a
bridge on North Main street near Carthage, Mo. The
foreman directed that a plank should be laid from the

bridge out onto a limb and for them to stand on the plank and cut the tree top of the tree off instead of cutting it at the ground, a safer way. The foreman ordered a rope to be thrown over a limb and the tree pulled over on the bridge along the course of the plank. The orders were obeyed, the plank so placed and the rope fastened to the tree, and the men were ordered to pull upon the rope while the tree was being cut; that plaintiff was inexperienced in this method of topping trees and relied upon the superior knowledge and skill of the foreman and undertook, with others, to carry out the orders, and after two men had chopped he took his turn thereat. The natural inclination of the tree was from the bridge.

That while chopping, and the others pulling, the tree top fell back from its natural inclination onto the bridge and along the course of the plank, and in so doing, the butt and body of the tree fell on and against the side and hip of the plaintiff and struck him with such force and violence that he was knocked off the plank and fell a long distance down into the deep ravine and received injuries detailed, which he charges makes him a cripple for life, and destroys his earning capacity for a number of years, if not for life.

The petition charges that he was using all ordinary care for his own protection and that his injuries were directly caused by the negligence of the defendant's foreman, under whom he was working, in the following particulars: "That the defendant negligently ordered the top of said tree to be pulled over onto said bridge, when defendant knew, or by the exercise of ordinary care could have known, that the trunk of said tree would fall on said plank and injure plaintiff, that the defendant negligently ordered said tree to be topped instead of cut at the ground, when it knew, or by the exercise of ordinary care could have known that to cut the tree at the ground was a safer way; that the defendant negligently ordered said tree

pulled over on the bridge, when it knew, or by the exercise of ordinary care could have known, that said tree should have been allowed to fall in the opposite direction. That said defendant was negligent in furnishing plaintiff an unsafe place to perform his work, when it knew, or by the exercise of ordinary care could have known, that said plank was too narrow and insecurely fastened to permit said tree to be pulled over on said bridge along the course of said plank gangway." Plaintiff asked fifteen thousand dollars damages. ·

Failing on its demurrer to the petition, defendant answered denying generally the allegations of the petition, and coupled on the defenses of contributory negligence and assumption of risk, to which plaintiff filed a replication denying such matter and prayed anew for judgment as asked in the petition.

A jury was called on the issues so made up and the evidence tended to prove that plaintiff was twenty-three years of age and had left his father's home about four years before. That on June 28, 1911, he was in the employ of defendant telephone company and was working under the orders and directions of its foreman, Minor Shaw, and had been so working for defendant, and under said foreman, for about twenty days prior to that day. He had worked, before this, for a concern driving one of their teams used in this defendant's construction work building a cable line in Joplin, but his sole duty was to drive the team; had worked for an electric company at digging holes and setting poles, occasionally cutting down a tree found in the way. He had also worked as a hostler in a railroad round-house and some at grading (but not in clearing off) a right of way in railroad construction work, and had aided his father some in clearing up over 100 acres of land, but topped no trees. There was evidence that plaintiff had had no experience in topping trees in the manner hereinafter mentioned.

Minor Shaw employed and discharged the workmen whom he employed for the defendant, and acted as their foreman, giving orders and directions for the work at hand. On the afternoon of June 28 his gang of workmen consisted of the driver of the supply wagon, one Pinkey Carter, two linemen, Sam Karch and Louis Pippin, and two groundmen, Roy Ferrell and this plaintiff. A groundman assists the lineman in moving anything which interferes with the line. This supply wagon, on said afternoon, in addition to the tools carried, had in it wires, nails, blocks, sleeves, insulators, wrenches, rope, axes, etc.

The foreman and this crew of five men all left the business section of Carthage, about 2:30 that afternoon and drove northward down Main street to go over one of the defendant's toll lines extending out of Carthage.

On North Main street near the outskirts of the city, a bridge, thirty to forty feet long by eighteen to twenty feet wide, extending north and south, spanned a ravine extending east and west, in the bottom of which, and about twelve feet below the bridge, was a small stream of water in an old mill race.

A dead, thorny locust tree stood near the edge of the water, on the north side of the mill race, near the north end, and on the east side, of the bridge. It stood within three or four feet of the bridge, and inclined, naturally, to the south and southeast, both from its base upward and from the point where it was chopped off, upward. The bridge had wooden, open banisters about three feet high extending along its east and west sides. Extending horizontally from the north side of this tree was a limb two inches in diameter which was on a level with the banister on the east side of the bridge. The tree towered about twelve feet above this banister and it had limbs and branches above the one mentioned, and which extended out even with but above this banister. The ground at the base

of this tree was sloping, rough and neglected, with some rocks scattered about the surface.

The men had picked up an old plank about six feet long, about ten inches wide, and about two inches thick, which they had laid across the wagon for a seat board. The men drove northward across this bridge, and as they did so, the foreman, Minor Shaw, pointed out this tree saying that they must cut it, but would do so as they came back to town. They continued their work farther on for about three-quarters of a mile and turned around and came back.

On reaching this bridge, Shaw ordered the wagon to stop and told the crew that he had orders to cut the tree. The men all got out and started as if to cut it at the ground, when Shaw said that they would just cut the top out; that the company did not expect much of them that day, their first day out on the job, and that they were in a hurry. This was about 4:15. At this juncture Shaw said, "Take that board and lay it upon the limb of the tree and stand on the board and cut the tree," which order seems to have been addressed to Ferrell, who complied with it by putting one end of the plank upon the limb and the other upon the banister. At the same time he said, "Get a long line and throw it over the tree so you can pull it over on the bridge," which order seems to have been given to Karch, who complied. He threw the rope through an open space above a limb overhanding the banister and tied the rope to a limb about eight feet from the body of the tree and a few feet above the east banister. The plank, as laid, extended about ten inches over the edge of the banister and twelve to fifteen inches over the limb. It lay against the body of the tree, and in a generally east and west direction, and was in no manner fastened or secured to the banister or the limb. It was about fifteen feet from the board to the ground.

Pippin went out upon the plank and started the cutting, with an axe, at a point about three feet above

the plank, the tree at that point being six to eight inches in diameter. Some of the men, including the plaintiff, stood about eight feet north of the line of the plank and about the center of the bridge, and pulled upon the rope which was fastened to the tree as stated. The rope, in addition to slanting upward from their hands to the limb, extended in a generally northwest to southeast direction.

After Pippin had cut two or three minutes, Ferrell took a turn in his place as long, and then the plaintiff, relieving Ferrell, went out upon the board, where the others had stood, and began to chop at the same point. When he went out he found notches cut on two sides of the tree, made by left and right-handed chopping. Karch stood on the bridge, at the point stated, and with the aid of some of the men held the rope and pulled on it, while the chopping was going on by plaintiff. Karch testified that the idea was, not to pull the tree in the same direction as the plank, but to swing the tree in a southwestern direction so that it would stay on the bridge instead of falling into the water as naturally inclined.

While chopping, the plaintiff's front (or left) foot was within a few inches of the tree so that he faced rather to the southeast, and behind him the men pulled on the rope attached to the right and above him. While plaintiff was chopping, the tree fell suddenly (according to Karch), but only a second or two (according to plaintiff) before plaintiff expected it to fall. Plaintiff tried to reach the stump to hold to it, but could not retreat to the east beyond the limb upon which the plank rested because the plank, not being fastened, would tip up, nor could he retreat to the north because the plank was too narrow.

Describing the finish, Karch said: "He (meaning plaintiff) chopped there and we were pulling on the rope and the tree started to fall toward the creek and we pulled the tree around and landed it on the bridge.

And when the tree hit the bridge, the body of the tree seemed to hit the banisters and it jumped back and quivered and hit and knocked him off the plank, down into the bottom of the creek. It seemed to strike him on the hip on the right side." Plaintiff said: "If it hadn't jumped it never would have hit me. When it hit the banister, it flew around and hit me." Plaintiff was not hit by any limb of the tree, nor does it seem that he was struck by the fall of the body of the tree *down* upon him.

When the tree top quieted, it lay south of the plank, the body of it across the stump, the top of it across the banister and the plaintiff, writhing in pain from injuries, which are the subject of this action, was trying to get out of the water below, into which the body and butt of the tree had swept him.

None of the men objected to the work or the manner it was being done. Plaintiff knew the men were pulling on the rope and that they intended to pull the tree over on the bridge. By excerpts from plaintiff's deposition, taken before the trial, and his testimony at the trial, we learn that plaintiff when he went upon the plank thought he could hold to the stump and keep from getting hurt and that when it broke that he intended to catch hold of the stump to keep the tree from hitting him. That he expected the tree to fall along the course it fell, but testified that if it had not jumped it never would have hit him. As the tree fell he was trying to reach the stump. Out of both these opportunities the defendant never showed that when plaintiff went upon the plank he apprehended any dangers other the one he seems to have escaped, to-wit, that of the tree falling *down* upon him.

Minor Shaw assisted in picking the plaintiff up and took him to the company's physician, Dr. Keithman, who sewed up plaintiff's ear, put his broken arm in splints and otherwise treated him. The arm re-

mained in splints till August 10, 1911. The physician's bill seems to have been paid by the defendant. The trial was held November 30, 1911. Dr. Keithman did not testify. Dr. Searcy of Exeter examined the plaintiff amout three weeks before the trial for the purpose of testifying and did so. He testified to a scar left on plaintiff's ear and an interosseous callous formed at the wrist between the ulna and radius, where the arm had been broken, which prevents free motion of the radius over the ulna which the wrist had before the accident and which any normal wrist should have. Dr. Searcy gave it as his opinion, from the history of the case, that the rheumatic pains, of which plaintiff complains, will last as long as plaintiff lives. Plaintiff testified to pains in the back and head, his inability to sleep well at nights, his inability to earn anything or to do any work, other than "a little choring around," and his previous earning capacity with defendant of $2.75 per eight-hour day, and its loss as a consequence of his injury.

At the close of plaintiff's evidence the defendant asked an instruction in the nature of a demurrer thereto. This was overruled and the defendant was given an opportunity to offer testimony and declined to do so, but again offered its demurrer to the evidence, which was again overruled. The instructions necessary to be noticed will be set out in the opinion. The jury returned a unanimous verdict for $7000, following which a judgment in that sum was rendered in favor of respondent, from which this appeal was taken.

III. SUFFICIENCY OF THE PETITION. The petition sufficiently states a cause of action so that no error was committed in overruling the demurrer thereto, the objection to the introduction of evidence at the inception of the trial and the motion in arrest of the judgment. In view, however, of our later ruling herein, that negligence of the master cannot be predicated on the act of the master in doing his work in the

more dangerous way when a safe way and a dangerous way are both open to him, unless the more dangerous way is not a reasonably safe way, if, on a retrial, respondent desires to go to the jury on that theory of negligence, in addition to the negligence well pleaded in the petition, he should make a proper amendment alleging that such more dangerous way is not a reasonably safe way.

IV. DEFENDANT'S NEGLIGENCE. The question of defendant's negligence, under this record, was one for the jury, under proper instructions, and it would have been error to have taken the issue from them by giving the peremptory instruction asked at the close of the evidence. We have set the testimony out in detail, which, with what will be necessarily said in the course of the opinion, makes a discussion of the question superfluous.

V. CONTRIBUTORY NEGLIGENCE. Appellant contends that respondent was guilty of contributory negligence as a matter of law, and that, therefore, error was committed in submitting the question to the jury as an issue of fact.

Is this true?

If the hazard involved in the conduct of the respondent was one about which reasonable minds would differ, it is a question of fact for the jury. [Rhea v. Mo. Pac. Ry. 171 Mo. App. 160, 156 S. W. 4; Cole v. Transit Co., 183 Mo. 81; Powers v. Transit Co., 202 Mo. 267; Curtis v. McNair, 173 Mo. 271.] And, unless we can say that the danger to the respondent in standing upon the plank and cutting the tree off while the others were pulling upon the rope, to pull the tree upon the bridge, was, in view of all the circumstances in evidenc, so obvious, and of such a degree that he was not justified in the belief that he could work in safety, with the exercise of care and caution, or, unless a reasonably prudent man would not have attempted it, and it could not have been done even

with caution, then it remains a question for the jury. [Shore v. Bridge Co., 111 Mo. App. 278; Obermeyer v. Chair. Co., 120 Mo. App. 59; Harrod v. Packing Co., 125 Mo. App. 357; Stafford v. Adams, 113 Mo. App. 717.]

Where the master retains control of the work, under the supervision of the foreman, the servant is warranted in relying somewhat upon the superior knowledge of the master, and his presence at, and direction of, the work is equivalent to an assurance of safety. [Bloomfield v. Worster Construction Co.; 118 Mo. App. 254; Smith v. Kansas City, 125 Mo. App. 150.] And the servant is not required to search for danger. [Herdler v. Stove and Range Co., 136 Mo. 3.] And, absent an open, glaring and imminent danger, where the evidence tends to show such supervision and presence of a foreman, that circumstance, we think, should be considered in determining whether or not the issue of contributory negligence, in the given case, is one of fact for the jury.

Appellant cites some cases in support of its contention, that as a matter of law, the respondent here was guilty of contributory negligence, precluding recovery. Forbes v. Dunnavant, 198 Mo. 193; Knorpp v. Wagner, 195 Mo. 637 and Beckman v. Brewing Co., 98 Mo. App. 555, so cited by it are not in point. The first one went off on the fellow-servant doctrine and the other two on assumption of risk. The other cases so cited are, Schiller v. Brewing Co., 156 Mo. App. 569; Meyers v. Glass Co., 129 Mo. App. 556 and Whaley v. Coleman, 113 Mo. App. 594. In the first case, Schiller, the danger was not only obvious and certain due to an icy condition known to the deceased, but it could have been avoided by the use of an appliance at hand which the master had furnished. The risk was entirely unnecessary. There was no foreman there whose presence would have been any assurance of safety, if, under the circumstances, it could have

been. And, as the deceased knew *fully* all the conditions he should have expected the *very* thing to happen which did happen, which, in view of the evidence here tending to prove respondent's inexperience in topping trees in this manner, was not the case here. In the Meyers case the servant knew of the insecure fastening of the doubletree to the wagon tongue. He drove uphill standing on top of his loaded wagon, with the lines wrapped around his hands. When the doubletree came off the wagon tongue, the horses, of course, pulled against the lines instead of the weight of the wagonload, and, as a consequence, pulled him suddenly to the ground, when if he had been merely holding the lines in his hands they would have slipped through his hands and no injury would have resulted. There the *very* danger which did occur was obvious, and not some unforeseen danger as here. In the Whaley case the drillman, in putting giant powder into a drillhole, used a steel drill instead of a gas pipe plugged in the end with wood which he could have had by waiting a few minutes. As a result the contact of the steel with the sides of the drillhole made a spark and ignited the powder, the very thing which might have been expected, and was held to have been guilty of contributory negligence of course.

Among the arguments made by the appellant is that inasmuch as the admission of the respondent shows that he had a full realization of *all* the dangers of his position beforehand, and had carefully calculated them and had deliberately figured out a way to avoid them, he was guilty of contributory negligence. To begin with, the admission proves no more than that he had a realization of *some*, but not necessarily *all*, the dangers involved. Mere knowledge of the dangers in working with a defective instrumentality will not defeat the action, unless the danger was so glaring as to threaten immediate injury. [Jewell v. Nut & Bolt Co., 231 Mo. 176, and cases cited on

page 201; Shore v. Bridge Co., supra.] And this, although the servant admits knowledge of the danger. [Burkard v. Rope Co., 217 Mo. 466; Buckner v. Horse & Mule Co., 221 Mo. 700.]

We cannot say conclusively, and as a matter of law, that respondent, although apprehending danger, was not justified in the belief that he could work with safety, with the exercise of care and caution. Grant that he realized that there was some danger, that alone neither makes the danger so glaring nor such a unanimity of reasonable minds on the hazard involved that we can say as a matter of law that he was guilty of contributory negligence. At most it is only a circumstance for the jury in determining the question of fact, and not a conclusive inference from which a court can say as a matter of law that he was guilty of contributory negligence.

When we consider that when respondent went upon the plank that the tree was cut three feet above where he stood and that it already had notches cut on both sides of the tree by left and right-handed chopping, which, from the position of the choppers could only have been more on the southwest and northeast sides of the tree, than the east and west sides respectively; and when we consider that the natural inclination of the tree in falling, as well as the influence of the notches on the direction it would take in falling, would be away from the position of the choppers, and that it was indeed problematical whether the men at the end of the rope would overcome all this and succeed in pulling the tree upon the bridge and avoid its falling into the ravine, and that reasonable minds would differ on the hazard involved if they did succeed in pulling it upon the bridge, we are clear that the question of contributory negligence was one of fact for the jury, and are equally clear that it was well submitted to them by instructions.

VI. *Assumption of risk.* Under the above head the appellant, in its brief, contends (1) that it had a right to conduct its business in its own way, if not unlawful, and that if a servant enters upon its performance, without objection to the method selected he assumes the risk of injury incident to that method of doing the work; and (2) as the place of work was not a permanent, but a shifting place (a) the rule to furnish a safe place does not apply, and (b) as the place was made by fellow-servants, he cannot recover. The *brief* and *argument* then winds up with a conclusion that under either charge of negligence (that of *method* and that of *place*), the risks were assumed by respondent.

We premise this discussion with a few citations from all the courts of this State, to the effect that the servant does not assume any risks incident to his master's negligence. [Curtis v. McNair, 173 Mo. 270; Blundell v. Mfg. Co., 189 Mo. 552; George v. Railroad, 225 Mo. 406; Mack v. Railroad, 123 Mo. App. 531; Harrod v. Packing Co., supra; Obeymeyer v. Chair Co., supra; Stafford v. Adams, supra; and this court, Holman v. Iron Co., 152 Mo. App. 672. The master's negligence, proven or conceded, eliminates the question of assumption of risk. [Holman case.] "Assumption of risk . . . . disappears from view when we find the negligence (of the master) is the producing cause of the injury. The risks assumed by the servant are those risks alone which remain after the master has exercised ordinary care." [Charlton v. Railroad Co., 200 Mo. 433.] All the cases hold that the defense of contributory negligence remains, and of course is an issue of law or of fact, depending upon circumstances noticed in the preceding paragraph. When the jury, therefore, under proper instructions, finds that the injuries resulted from the direct negligence of the master, they *thereby* find that the risks of such injury were not assumed by the servant, be-

cause that is the construction which the law puts upon such a finding.

(1) *Right to do its work in its own way.* On the contention that the appellant had a right to do its work in its own way, we hold that the contention is subject, always, to the qualification that the master must remain within the boundaries of reasonable care. [Mack v. Railroad Co., supra; Curtis v. Mc-Nair, supra; Brandt v. Brewing Co., 159 Mo. App. 568.] The question, therefore, in its final analysis, must go back to the question of the master's negligence, if any, in failing to exercise reasonable care to furnish the servant reasonably safe appliances with which and a reasonably safe place at which, to perform the employment. Cases cited by appellant recognize this doctrine fully, but one of them, Letanovsky v. Shoe Co., 157 Mo. App. 120, suggests that the rule is not so strict with respect to the mode and manner in which the master sees fit to conduct his business. On the authority of that case, appellant contends that it had a right to top the tree in the manner detailed in the evidence and that risks of injury as a result thereof, are assumed by respondent. But the contention is not sound. There it was held that negligence could not be predicated on the master's requirement that all sheets of leather should be passed through a splitting machine, as the master had a right to conduct his business that way if it desired, and if injury resulted from that alone, the risk was assumed. That case would be applicable here if the negligence charged against appellant was that it cut trees from against its telephone wires instead of leaving them against the lines. But the same case, holds that the master is required to exercise ordinary care toward rendering the appliance furnished to the servant reasonably safe for the purpose and that negligence could be predicated upon its failure to do so, the risks of

which negligence were not assumed. That is the case at bar.

(2) (a) *Shifting or temporary place.* We are not dealing with a case where the subject of the operation is undergoing change from the work done upon it, as in Bradley v. Railroad, 138 Mo. 293; or Gibson v. Bridge Co., 112 Mo. App. 594, for no work was being done on the place. And, although the character of the work involved here was in going from place to place in removing obstructions from telephone lines, so that every place of work was temporary, in view of the evidence that the appellant, through its foreman, Shaw, directed these men what to do and where and how to do it, the appellant, although a telephone company, owed the plaintiff, its servant, the duty of exercising reasonable care for his safety. [Corby v. Telephone Co., 231 Mo. 417, a case against this appellant and very much in point; Jarrell v. Coal Co., 154 Mo. App. 552; Jewell v. Nut & Bolt Co., 231 Mo. 176.] If appellant was negligent in this regard, risks of resulting injury by reason thereof, were, of course not assumed, and no error was committed in refusing instruction No. 17 asked by appellant.

(2) (b) *Fellow-servant instruction.* Instruction No. 12 asked by appellant, and refused, declared that the men in chopping and in pulling the rope were fellow-servants and that if plaintiff was injured, as the direct negligence of the men in pulling the rope, that plaintiff could not recover. Error is charged in refusing that instruction, the appellant contending that the foreman, in giving the orders, did not go into *details*, but simply ordered the gang to place the plank, chop the tree and pull it upon the bridge, leaving to them to fasten the plank or not, as they pleased, chop the tree off, and let it fall upon them or to retire, before it fell, to a place of safety, and from such place to pull the top upon the bridge. From this premise it concludes, among other things, that the men, in

pulling upon the rope, were fellow-servants of the plaintiff, and if injuries resulted as a consequence thereof, the appellant is not answerable therefor. We cannot so conclusively interpret the evidence and thereby say that the court was warranted in giving the peremptory direction that they were fellow-servants. [Combs v. Construction Co., 205 Mo. 367.] If we did so, the holding of necessity would mean that if Minor Shaw was foreman when he gave the orders he ceased to be foreman as soon as he gave them, and this we cannot do.

If the injury was due to the negligence of the foreman, the fellow-servant doctrine is inapplicable. [Combs v. Construction Co., supra; White v. Railroad, 156 Mo. App. 563; Reeder v. Lime Co., 129 Mo. App. 107.] There could have been no recovery in this case, because of instruction No. 1, without a finding of the jury, not only that the respondent and the men were under the supervision of defendant's foreman, and that he gave the orders, but that by reason thereof the respondent was injured as the direct result of the negligence of the foreman. Such a finding precludes the idea that the injuries were the result of the negligence of fellow-servants, without any direct instruction on the fellow-servant principle. But if appellant desired an instruction on that principle, it should have asked a proper, and not a peremptory, one, and no error was committed in the refusal of said instruction No. 12.

(3) *The second instruction.* Error is charged in giving the second instruction, to-wit:

"The court instructs you that in determining whether or not the defendant, through its officer or foreman, was guilty of negligence, as required by instruction No. 1, you must only consider the following allegations or grounds of negligence which plaintiff relies upon, to wit:

First: Whether or not the defendant negligently ordered said tree to be topped and pulled over on the

bridge instead of cutting it and allowing it to fall in the opposite direction, and whether or not the defendant knew, or by the exercise of ordinary care could have known, that to top and cut said tree in the manner as described in evidence, and having same pulled over onto said bridge along the course of said plank, was the more dangerous way.

"Second: Whether or not said defendant was negligent in furnishing defendant with an unsafe place to perform his work, and whether or not it knew, or by the exercise of ordinary care could have known, that said plank was too narrow and insecurely fastened to permit said tree to be pulled over on said bridge along the course of said plank, if you find that said plank was too narrow and insecurely fastened.

"Therefore, if you shall find and believe from the greater weight of evidence that defendant, through its agent or foreman, did any one or more of the acts as above enumerated, and that it knew, or by the exercise of ordinary care could have known, that there was a safer method of cutting said tree, and that it knew, or could have known by the exercise of ordinary care, that said plank was not reasonably safe, and that said plank was too narrow and was not securely fastened, in time to have avoided injury to plaintiff; and if you further find that such act or acts were negligently done, and that said negligence, if any, was the direct cause of the injury, if any, to plaintiff, then you are justified in finding the issues for the plaintiff upon the condition as set forth in the instruction immediately preceding and the other instructions herein."

Instruction No. 6 defined "negligence" to be the failure to exercise that degree of care that an ordinarily prudent person would exercise under like or similar circumstances, and defined "ordinary care" to mean the exercise of that degree of care that an ordinarily prudent person would exercise under like or similar circumstances.

The court gave at the request of the defendant this instruction, marked L, to-wit:

"The court instructs you that the fact that the foreman ordered the tree to be topped instead of ordering it to be cut at the ground, if you believe he did order it topped, is no evidence of negligence on the part of defendant, and you cannot find a verdict for the plaintiff on that ground alone."

By this instruction L, the jury were forbidden to find negligence in the appellant in ordering the tree topped instead of to be cut at the ground, and by instruction No. 2, two acts of negligence were singled out upon which a recovery would be permitted.

The first act, so singled out, was, if the defendant negligently ordered the tree to be topped and pulled upon the bridge, instead of cutting it and allowing it to fall in the opposite direction, if the defendant knew, or by the exercise of ordinary care could have known, that to top the tree in that manner and have it pulled upon the bridge along the course of the plank was the *more dangerous way* (than to cut it and allow it to fall in the opposite direction). The other act related to *place*. Then the court concludes the instruction by saying that if the defendant, through its foreman, did any *one* or *more* of the acts enumerated, "and that it knew, or by the exercise of ordinary care could have known, that there was a *safer* method of cutting the tree . . ." and if the *act* or *acts were* negligently done, then a recovery is permitted, etc.

Even if, when read together, the instructions sufficiently authorize a recovery for defendant's negligence, that is, general negligence, in this method of doing the work, that is not enough, as between the master and servant, as relates to the mode or manner of doing the work.

The law does not require the master to adopt the safest methods of doing its work. A jury might find defendant to be guilty of negligence (under the defini-

tion in instruction No. 6), in adopting the *more danger-ous way*, and still that *way* might be a reasonably safe way. If the method which the master adopts is a reasonably safe way .then the master is within the law in that respect, and, if injuries are received by the servant in consequence thereof, there can be no re-covery because the risks of such injuries are among those assumed in the employment. [Schiller v. Brew-ing Co., 156 Mo. App. 569; Letanvsky v. Shoe Co., 157 Mo. App. 120; Beckman v. Brewing Co., 98 Mo. App. 555.] If the jury shall find that the method adopted (that of cutting the tree from the plank and pulling the top upon the bridge) was not a reasonably safe method, then appellant failed in its duty to exer-cise reasonable care to provide a reasonably safe method of cutting the tree and was negligent, and, as seen by the preceding paragraphs, the risks of consequent in-jury were not assumed by the respondent. Other-wise, it was not negligent and the risks of injury, through the use of the method, were assumed by the plaintiff. We have read the instructions in vain to find any place where the jury, while required to find that the defendant was negligent if it found this work to have been done in the *more dangerous way*, and that there was a *safer method*, were also required to find that such *more dangerous way* was not a reasonably safe way. As the instruction (No. 2) was in the alterna-tive and permitted a recovery for negligence in either *method* or *place* furnished, and as there was not enough required of the jury as to *method*, reversible error was committed in giving the instruction.

It is unnecessary to notice other alleged errors. All of them have been considered. While the fourth instruction may not be reversible error, the feature of it which says that "unless the defendant has proven such facts," in view of the fact that the defendant did not introduce any evidence, is misleading. It was in

connection with the issue of contributory negligence and most important, but can be avoided on a retrial.

For the error mentioned the cause is reversed and remanded for a new trial in accordance with this opinion. *Sturgis, J.*, concurs. *Robertson, P. J.*, dissents to paragraphs I and II and expresses no opinion on the merits as he believes that stage of the case should not have been reached.